**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 18, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-21129

Frank Virgil
                              Petitioner-Appellant,

versus

Doug Dretke, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division
                              Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before JONES, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    We confront here a situation in which two persons, both expressly stating an inability to serve as fair and impartial jurors, found their way onto the jury that convicted Frank Virgil and sentenced him to thirty years in prison. Virgil, now seeking a writ of habeas corpus, contends that counsel's failure to challenge for cause these two jurors deprived him of his Sixth Amendment right to effective assistance of counsel. We agree and hold that the state court's decision to the contrary was an unreasonable application of clearly established Federal law as determined by the Supreme Court.

## I

Frank Virgil was convicted and sentenced to thirty years in prison for causing bodily injury to an elderly person in violation of Texas Penal Code § 22.04.[1] His conviction was affirmed on direct appeal,[2] and his petition for discretionary review was denied.[3] Virgil, proceeding *pro se*, initiated state habeas proceedings, and the court ordered defense counsel, John Carrigan, to file an affidavit in accordance with the guidelines set out in *Ex parte Morse*.[4] The Texas Court of Criminal Appeals denied Virgil's petition on the findings of the trial court without hearing or written order.

Again proceeding *pro se*, Virgil sought federal habeas relief under 28 U.S.C. § 2254, claiming, among other things, ineffective assistance of counsel. The district court denied Virgil's habeas petition and, *sua sponte*, denied Virgil a certificate of appealability ("COA").[5] Virgil timely filed a notice of appeal.

---

[1]Section 22.04 provides, "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to [an] elderly individual . . . bodily injury." TEX. PEN. CODE § 22.04(a)(3) (Vernon 2004).

[2]*Virgil v. Texas*, No. 14-99-00214-CR, 2001 WL 123990 (Tex. App.--Hous. [14th Dist.] Feb. 15, 2001).

[3]*Virgil v. State*, No. 920-01 (Tex. Crim. App. Sept. 12, 2001) (unpublished).

[4]591 S.W.2d 904 (Tex. Crim. App. 1980).

[5]*Virgil v. Dretke*, No. H-03-1183 (S.D. Tex. Oct. 20, 2003) (memorandum and order) (unpublished).

A single judge of this Court granted a COA on the issue of whether Virgil's counsel was ineffective for failing to challenge for cause biased jurors, finding that the affidavit submitted by Virgil's counsel in connection with the state habeas proceeding fell "short of demonstrating sound trial strategy inasmuch as he failed to explain why he did not challenge for cause the five jurors that Virgil identified as being biased."[6] Thus, "[C]ounsel's strategy appears to have been 'so ill chosen that it permeate[d] the entire trial with obvious unfairness.'"[7] The judge denied a COA on all other issues.

## II

Virgil's ineffective assistance of counsel claim centers on the performance of his attorney during voir dire. Specifically, Virgil contends that Carrigan was ineffective for failing to challenge for cause Roger Sumlin, Thomas Sims, Eva Saddler, Grant Faulconer, and Mary Jarboe ("the challenged jurors")--all members of the venire that sat on the petit jury. Virgil argues that each of the five challenged jurors stated during voir dire that they could not be fair and impartial in his case. As part of our analysis in deciding ineffective assistance of counsel claims is "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

---

[6]*Virgil v. Dretke*, No. H-03-CV-1183 (5th Cir. Apr. 1, 2004) (unpublished).

[7]*Id.* (citing *Garland v. Maggio*, 717 F.2d 119, 206 (5th Cir. 1983)).

-3-

time,"[8] we provide an extended discussion of the voir dire proceeding.

Carrigan's strategy during voir dire appears to center around a single question. Specifically, Carrigan stated:

> My general question to each of you is this and I may ask each of you individually: Let's assume in a hypothetical case, you as a juror -- not necessarily in this jury panel, but in any kind of panel -- you find out that a defendant has been convicted before of an offense which is not the same offense for which that person is charged and which you are on a jury, would you -- if you served on that particular jury, would you believe that defendant who's had a prior case filed against him? Would you believe him at all or disbelieve him at all?
>
> In other words, would you give that defendant the same benefit of credibility as you would anybody else? If you don't mind, I'd like to go down the list simply by juror numbers.[9]

Carrigan proceeded to ask each venireperson the above question, varying the phrasing at times to ask whether they could be "fair" with respect to the testimony of a person convicted of a prior offense.[10] Of the 14 venirepersons struck with peremptory challenges, all but one responded in a fashion similar to the five challenged jurors.

---

[8]*Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[9]Transcript, vol. 4, at 66.

[10]Carrigan's purpose in asking this question is clear. Virgil argued self-defense and, given the lack of eye-witnesses, was forced to take the witness stand in his own defense. On direct examination, Carrigan brought out both of Virgil's prior convictions: one in 1989 for a drug-related charge, and one in 1975 for breaking into a building. Transcript, vol. 5, at 57.

With three of the challenged jurors, Saddler, Faulconer, and Jarboe, their response to this question was essentially their only testimony during voir dire. The following colloquy occurred:

```
MR. CARRIGAN:  Okay.  No. 31, is that Ms. Saddler?
A VENIREMAN:   Yes.  No.
MR. CARRIGAN:  You could not [be fair]?
A VENIREMAN:   No.
MR. CARRIGAN:  Ms. Faulconer?
A VENIREMAN:   No.
MR. CARRIGAN:  Mr. Johnson?
A VENIREMAN:   No.
MR. CARRIGAN:  Ms. Jarboe?
A VENIREMAN:   No.[11]
```

Both Sumlin and Sims responded in similar fashion to Carrigan's general question. Specifically,

```
MR. CARRIGAN:  All right.  Okay.  Is it Ms. Rogers --
               Mr. Roger Sumlin.
A VENIREMAN:   My answer would be no.
MR. CARRIGAN:  You would not believe that witness.
A VENIREMAN:   I would tend not to believe that witness.
MR. CARRIGAN:  Okay.  17 [Sims], would you be able to
               believe a witness under those
               circumstances?
A VENIREMAN:   No.[12]
```

Both Sumlin and Sims volunteered additional testimony that Virgil now contends illustrates their inability to be impartial jurors. Carrigan asked the venire whether relationships with law-

---

[11]Transcript, vol. 4, at 74-75. With Saddler and Jarboe, the above passage is the only testimony given during voir dire. Faulconer testified, in addition to the above testimony, that his prior conviction would not affect his ability to sit as a juror in Virgil's case. Transcript, vol. 4, at 52. Both parties used a peremptory challenge on Johnson, the other venireperson quoted above. Generally, Johnson testified that his prior experience on a jury led him to believe that all witnesses were liars. See Transcript, vol. 4, at 41-42, 83-84. The state's challenge for cause of Johnson, the only for-cause challenge during voir dire, was denied by the trial judge without comment. Transcript, vol. 4, at 41-42.

[12]Transcript, vol. 4, at 70-71.

enforcement officers would prejudice them as jurors in Virgil's case. Of the challenged jurors, only Sumlin responded:

> MR. CARRIGAN: Okay. How many on this panel have either been prior police officers, peace officers or related to someone in law enforcement? A whole bunch of you.
>
> Well, let me put it this way: If you were chosen on this jury panel, is there anything about your prior experience with having been related to a peace officer that would disqualify you or cause you to be prejudiced against a criminal defendant?
>
> Any of you that held up your hand, do you think you would be prejudiced against the defendant from any way because of your association with any person in your family or anyone that you have known was a peace officer? Anyone would be prejudiced at all.
>
> * * *
>
> MR. CARRIGAN: Okay. Anyone else on that second row? You're number 15?
> A VENIREMAN: 16 [Sumlin].
> MR. CARRIGAN: 16.
> A VENIREMAN: 16. And my concern would be repeated offenses, a pattern of past behavior, repeated offenses.
> MR. CARRIGAN: Okay. But have you had any association in the past with police officers in your family or friends?
> A VENIREMAN: Yes, I have relatives. I'm just saying from their experience that they've told me about, repeated offenders.
> MR. CARRIGAN: So therefore you could not serve as an impartial juror in this case?
> A VENIREMAN: Perhaps not.
> MR. CARRIGAN: Is your answer no or yes?
> A VENIREMAN: I would say no.[13]

---

[13]Transcript, vol. 4, at 79-81.

As Carrigan concluded voir dire, he asked a final, open-ended question concerning prejudice. Of the challenged jurors, only Sims responded:

> MR. CARRIGAN: I guess what I'm asking each of you is: Is there anything in your background which would cause you to be prejudiced or have an unfavorable opinion against a defendant charged with such a crime?
>
> Is there anything in anybody's background that would cause you not to be a fair and impartial juror in Mr. Virgil's case, in this particular case, at this particular time, in this courtroom?
>
> * * *
>
> MR. CARRIGAN: Anyone else?  Your number?
> A VENIREMAN: 17.
> MR. CARRIGAN: You're Mr. Sims?
> A VENIREMAN: Yeah.  I don't know that it's going to be partial or impartial, but my mother was mugged and they never found the mugger. The thought keeps crossing my mind while we're talking about this, as far as assault on an elderly person.  So it's weighing me because of the fact that they never did find the person.  I'm thinking about that.
> MR. CARRIGAN: Would this cause you to be a juror who could not be fair and impartial in this case?
> A VENIREMAN: Yeah, I believe so.
> MR. CARRIGAN: All right.  Not believe or is it so?
> A VENIREMAN: I said: Yes, I do believe so.
> MR. CARRIGAN: Okay.  Thank you.  I don't know what else I can ask you folks.[14]

---

[14]<u>Transcript</u>, vol. 4, at 83-86.

-7-

This sets out the bulk of the testimony of the five challenged jurors.[15]  At no point during voir dire did counsel attempt to clarify, confirm, or rehabilitate this testimony.  Moreover, the trial judge never expressed any concern regarding the statements by the five challenged jurors regarding their ability to be fair.

## III

### A

As this case comes to us under 28 U.S.C. § 2254, our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that habeas relief may not be granted unless the state court proceeding resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."[16]  A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law; rather, the decision must be objectively unreasonable.[17]  Habeas relief is

---

[15]The other testimony provided by Sumlin and Sims is not relevant to our decision.  Both testified, in response to a question from the state, that they had no problem imposing a sentence of 25 to life upon a person convicted of a third offense.  Transcript, vol. 4, at 58.  In addition, Sims testified that a prior arrest of his brother for public intoxication would not affect his ability to be fair in Virgil's case.  Transcript, vol. 4, at 49.

[16]28 U.S.C. § 2254(d)(1) (2000); see Lindh v. Murphy, 521 U.S. 320, 324-26 (1997) (holding that AEDPA applies to all federal habeas applications filed on or after April 24, 1996).

[17]See Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004); Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004).

"inappropriate when a state court, at a minimum, reaches a 'satisfactory conclusion.'"[18]

Because we review only the reasonableness of a state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without a written opinion.[19] In this situation, we assume "that the state court applied the proper 'clearly established Federal law,'" and then determine "whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law."[20] Virgil's ineffective assistance of counsel claim involves mixed questions of law and fact; we review the federal district court's factual findings for clear error and its conclusions of law *de novo*.[21]

B

Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker. The Sixth Amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and

---

[18]*Morrow*, 367 F.3d at 313 (quoting *Williams v. Taylor*, 529 U.S. 362, 410-11 (2000)).

[19]*See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citing *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001), *cert. denied*, 535 U.S. 982 (2002); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

[20]*Schaetzle*, 343 F.3d at 443 (quoting *Canalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002) (quotation omitted)).

[21]*See Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001).

public trial, by an *impartial jury* of the State and district wherein the crime shall have been committed."[22]  Put simply, "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."[23]

The Supreme Court has unfailingly protected the jury room from juror bias in a variety of contexts, recognizing, for instance, that extensive pretrial publicity can taint the pool of prospective jurors to a substantial degree, warranting reversal of any conviction stemming from such hostility.[24]  Likewise, the Supreme Court polices the exercise of peremptory challenges, refusing to allow conviction when a prosecutor's measures of fitness for jury service are impermissible.[25]  And this is consistent with the

---

[22]UNITED STATES CONSTITUTION amend. VI (emphasis added).

[23]*Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Parker v. Gladden*, 385 U.S. 363, 366 (1966) (per curiam) (noting that a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors").

[24]*See, e.g.*, *Irvin*, 366 U.S. at 723.  In *Irvin*, the Court found a "pattern of deep and bitter prejudice" throughout the community against the defendant that precluded the seating of an impartial jury.  On less egregious facts, the Court has been unwilling to overturn convictions due to extensive pretrial publicity. *See Murphy v. Florida*, 421 U.S. 794, 800-01 (1975) (refusing to overturn a conviction where some of the jurors "had a vague recollection of the robbery with which petitioner was charged and each had some knowledge of petitioner's past crimes"); *Patton v. Yount*, 467 U.S. 1025, 1039 (1984) (refusing to overturn a conviction when the testimony of challenged jurors was "ambiguous" and "contradictory").  The juror bias in this case is patent: both Sumlin and Sims unequivocally expressed that they could not serve as fair and impartial jurors. *See* text attached to notes 13 (Sumlin) and 14 (Sims).

[25]*See, e.g.*, *Batson v. Kentucky*, 476 U.S. 79, 96 (1986) (holding that the Constitution forbids exclusion of jurors solely on account of race); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140 (1994) (holding that the Constitution forbids exclusion of jurors solely on account of gender).

Court's long-held view that the impartial jury is critical in determining guilt and punishment.[26]

Most relevant here are the Supreme Court decisions concerning biased decisionmakers. Starting with *Tumey v. Ohio*,[27] the Court has consistently found a breakdown in the adversarial process when the judge has a direct financial interest in the outcome of the proceedings. "[I]t certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, [and] substantial pecuniary interest in reaching a conclusion against him in his case."[28] This is so, despite the fact that "men of the highest honor and the greatest self-sacrifice" could serve as a decisionmaker "without danger of injustice" and despite sincere protests by interested judges that they can be fair.[29]

_____

[26]*See Apprendi v. New Jersey*, 530 U.S. 466 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt"); *Blakely v. Washington*, 542 U.S. 296 (2003) (applying *Apprendi* to Washington's sentencing scheme that allowed judge to find facts increasing penalty); *United States v. Booker*, 543 U.S. 220 (2005) (applying *Apprendi* and *Blakely* to the United States Sentencing Guidelines); *see also Crawford v. Washington*, 541 U.S. 36 (2004) (barring, except under certain exceptions, testimonial out-of-court statements by witnesses under the Sixth Amendment's Confrontation Clause, thus requiring presentation to the jury).

[27]273 U.S. 510 (1927); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 61-62 (1972).

[28]*Tumey*, 273 U.S. at 523.

[29]*Id.* at 532. In *Ward*, the Court extended the principle of *Tumey* to a situation where the revenue produced by the mayor's court provided a substantial amount of the municipality's funds. *Ward*, 409 U.S. at 59-60.

The clarity of the Supreme Court's reading of the simple command of the Sixth Amendment--guaranteeing that liberty will not be deprived until guilt is found beyond a reasonable doubt by an impartial jury--is evidenced by its consistent application by our sister circuits under factual circumstances quite similar to those in this case. Virgil directs our attention to the Sixth Circuit's decision in *Hughes v. United States*. There, in response to a question from the judge concerning whether the venireperson could be "fair in this case," one venireperson indicated that her relationship with law-enforcement officers would affect her impartiality. Specifically, the following colloquy occurred:

> JUROR: I have a nephew on the police force in Wyandotte, and I know a couple of detectives, and I'm quite close to `em.
> THE COURT: Anything in that relationship that would prevent you from being fair in this case?
> JUROR: I don't think I could be fair.
> THE COURT: You don't think you could be fair?
> JUROR: No.
> THE COURT: Okay. Anybody else? Okay. Where did we leave off?

Neither the court nor defendant's counsel followed-up with the potential juror, and defense counsel made no attempt to remove the juror with a peremptory or for-cause challenge. With only this testimony, the Sixth Circuit found the potential juror actually biased against the defendant.[30]

The Sixth Circuit relied, in part, on this Court's opinion in *United States v. Nell*, which found actual bias on the part of a

---

[30]*Hughes v. United States*, 258 F.3d 453, 456 (6th Cir. 2001).

venireperson that expressed a strong dislike for unions.[31] There, a defendant appealed the denial of for-cause challenges to two jurors. This Court ordered a new trial, finding both jurors actually biased and noting that "[d]oubts about the existence of actual bias should be resolved against permitting the juror to serve."[32] Both the Sixth Circuit, in *Hughes*, and this Court, in *Nell*, found it telling that neither venireperson ever stated that they would be able to render a fair and impartial verdict.[33]

We are also mindful that certain errors in the trial process are "so basic to a fair trial" as to defy harmless error review.[34] It is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an error that

---

[31]526 F.2d 1223, 1228-30 (5th Cir. 1976). We also note that the Eighth Circuit, in *Johnson v. Armontrout*, stated that "[t]rying a defendant before a biased jury is akin to providing him no trial at all. It constitutes a fundamental defect in the trial mechanism itself." 961 F.2d 748, 755 (8th Cir. 1992); *see also Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000) (recognizing that prejudice results when defense counsel fails to attempt to remove from the jury a person who has been established on voir dire to be biased).

[32]*Nell*, 526 F.2d at 1230.

[33]*Hughes*, 258 F.3d at 460 ("Given [the potential juror's] express admission of bias, with no subsequent assurance of impartiality and no rehabilitation by counsel or by the court by way of clarification through follow-up questions directed to the potential juror, we find [the potential juror] to have been actually biased in this case."); *Nell*, 526 F.2d at 1230 ("Never once did [the potential juror] say that he would be able to render a fair and impartial verdict. Rather, he reiterated how strongly he disliked unions.").

[34]*Chapman v. California*, 386 U.S. 18, 23 (1967); *Arizona v. Fulminate*, 499 U.S. 279, 309 (1991) (holding that "structural defects in the constitution of the trial mechanism" are per se prejudicial); *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993) (holding that the existence of structural errors "requires automatic reversal of the conviction because they infect the entire trial process").

taints any resulting conviction with constitutional infirmity.[35] Although we do not hold that a structural error alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context,[36] the fundamental nature of such rights--including the right to an impartial jury--serves as an important guidepost in our evaluation of whether the state court's denial of Virgil's ineffective assistance of counsel claim was "objectively unreasonable" under AEDPA. More so, the Supreme Court's treatment of the right to an impartial jury is more than a mere backdrop to our analysis; it is the lens through which we must examine counsel's performance in this case.[37]  To that, we now turn.

C

---

[35]*See Neder v. United States*, 527 U.S. 1, 8 (1999) (holding that the presence of a biased decisionmaker is structural error "subject to automatic reversal"); *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) ("A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him."); *Johnson v. United States*, 520 U.S. 461, 469 (1997); *Rose v. Clark*, 478 U.S. 570, 577-78 (1986); *Tumey*, 273 U.S. at 523.

[36]The Sixth Circuit adopted such an approach in *Quintero v. Bell*, 256 F.3d 409, 413-15 (6th Cir. 2001) (holding that counsel's failure to object on jury-bias grounds created a structural error that was per se prejudicial under *United States v. Cronic*, 466 U.S. 648 (1984)).  The Supreme Court initially vacated and remanded in light of *Bell v. Cone*, 535 U.S. 685 (2002).  The Sixth Circuit again granted habeas relief, finding that the error fell into a category of presumptive prejudice under *Cronic* and *Cone*.  368 F.3d 892 (6th Cir. 2004).  The Supreme Court denied certiorari, with Chief Justice Rehnquist and Justice Thomas dissenting.  *Bell v. Quintero*, 125 S.Ct. 2240 (2005).  In the dissents' view, the Sixth Circuit erred by resting on the proposition that "the presence of structural error, by itself, is necessarily related to counsel's deficient performance," which "warrants a presumption of prejudice."  *Id.* at 2242.

[37]*Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned."); *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000) (same).

-14-

We granted Virgil a COA to determine "whether counsel was ineffective in failing to use challenges for cause to remove biased jurors."[38] To succeed, Virgil must meet the familiar two-part test from *Strickland v. Washington*: deficient performance and prejudice.[39]


1


To prove deficient performance under *Strickland*, "[A] petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"[40] We give substantial deference to counsel's performance, "applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment."[41] Because we must make every effort "'to eliminate the distorting effects of hindsight,'"[42] a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of

[38]*Virgil v. Dretke*, No. H-03-CV-1183 (5th Cir. Apr. 1, 2004) (unpublished).

[39]466 U.S. 668, 687 (1984).

[40]*Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

[41]*Titsworth v. Dretke*, 401 F.3d 301, 310 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 689).

[42]*United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[43]

Virgil contends that his counsel was constitutionally deficient in failing to challenge for cause the five challenged jurors who were "actually and admittedly" biased. The State responds, first, that the challenged jurors' statements that they were disinclined to believe a witness with a prior conviction do not show bias toward Virgil. Second, the State offers several after-the-fact justifications for keeping two of the challenged jurors on the jury.

Counsel's performance in response to the testimony of three of the challenged jurors--Saddler, Faulconer, and Jarboe--was not deficient under *Strickland*. Each juror testified, with merely a single "no" answer, that they could not fairly consider the testimony of a person with a prior conviction.[44] This answer must be considered in context with the initial question asked by Carrigan as well as the subsequent modifications. First, Carrigan asked, "would you give [a defendant with a prior conviction] the same benefit of credibility as you would anybody else?"[45] Then,

---

[43]*Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (citations and internal quotation marks omitted).

[44]This testimony is quite different from that in *Hughes*. There, the juror testified that she could not be "fair" in a general sense, a much broader assertion than that in this case. *Hughes*, 258 F.3d at 456. Here, Saddler, Faulconer, and Jarboe only testified that they could not be fair in considering the testimony of a witness with a prior conviction.

[45]Transcript, vol. 4, at 66.

-16-

after an objection by the prosecutor, Carrigan restated the question: "Is a witness who has a prior criminal case, if you are on a jury, is that witness worthy of belief?"[46]  In context, we cannot say that it is unreasonable to conclude that the "no" answers from Saddler, Faulconer, and Jarboe merely indicate that, as between a witness with a prior conviction and a witness without, they are more likely to believe the witness without a prior conviction.

This is, at its heart, an honest answer.  Given that evidence of a prior conviction is admissible because it bears on the credibility of the witness,[47] the response of the potential jurors hardly suggests a showing of bias.  Rather, the law accepts the natural inference that a prior conviction lessens the credibility of a witness.  We suspect that most potential jurors would be inclined to disbelieve the testimony of a person with a prior conviction.  Moreover, the Supreme Court has never required that jurors come ready to serve with a blank slate, without

---

[46]Transcript, vol. 4, at 72.

[47]The Federal Rules of Evidence specifically provide for the admissibility of a defendant's prior convictions in certain limited circumstances. *See, e.g.*, FED. R. EVID. 609 (providing for the admissibility of prior convictions for impeachment purposes); FED. R. EVID. 404(b) (providing for the admissibility of prior convictions "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident); FED. R. EVID. 413 (providing for the admissibility of prior sex crimes in sex crime prosecutions); FED. R. EVID. 414 (providing for the admissibility of prior child molestation crimes in child molestation prosecutions).  The Texas Rules of Evidence are similar. *See, e.g.*, TEX. R. EVID. 609; TEX. R. EVID. 404(b); TEX. R. EVID. 412.

preconception or understanding of the real world.  As the Supreme

Court noted in *Irvin v. Dowd*,

> To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.[48]

The reality is that the role of the juror in our government would be weakened if our system expected each juror to lack any real-world sense of who is or is not testifying truthfully, and we are not convinced that this testimony alone would give rise to a valid for-cause challenge under Texas law.[49]  Such a limited and natural response is insufficient to raise any obligation on the part of counsel to respond with a peremptory or for-cause challenge.  As such, we cannot conclude that the state court's decision was an unreasonable application of federal law.

We find merit, however, to Virgil's finding of fault with counsel's lack of response in the face of express statements by Sumlin and Sims conceding bias against Virgil.  Sumlin stated that

---

[48]366 U.S. 717, 723 (1961); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.").

[49]*See Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) ("We could not have meant that jurors must be completely impartial and free of any trace of skepticism toward any category of witness.  Complete impartiality cannot be realized as long as human beings are called upon to be jurors.  No person sitting as a juror can completely remove his own experiences, beliefs, and values, however hard he may try.").  Moreover, nothing in the Texas Code of Criminal Procedure provides a for-cause challenge for a juror who tends to discredit the testimony of a category of witnesses.  *See* TEX. CODE CRIM. PROC. art. 35.16(a) (Vernon 2004) (listing valid for-cause challenges).

his relationship with law-enforcement officers would preclude him from serving as an impartial juror.[50]  Sims, likewise, volunteered that his mother's mugging was "weighing" on him as to whether he could be partial or impartial, finally concluding that he could not be "fair and impartial."[51]  We hold that Sumlin's and Sims's unchallenged statements during voir dire that they could not be "fair and impartial" obligated Virgil's counsel to use a peremptory or for-cause challenge on these jurors.  Not doing so was deficient performance under *Strickland*.[52]

Moreover, defense counsel's conclusory affidavit, submitted in connection with the state habeas proceedings, fails to rehabilitate his performance, as it lacks any suggestion of a trial strategy for not using peremptory or for-cause challenges on Sumlin and Sims. In relevant part, counsel's affidavit provides:

> I spent approximately thirty (30) minutes talking to and questioning the jury in this case.  I was able to ask all of the questions that I thought were necessary to determine if there was any prejudice or bias against my client.  I was also able to question the potential jurors regarding any issues that I thought might arise in this case.

---

[50]*See supra* text attached to note 13.

[51]*See supra* text attached to note 14.  This testimony is much more in line with that of the juror in *Hughes*.  *Hughes*, 258 F.3d at 456 (juror responded, "No" to question asking if she could be a "fair" juror in the defendant's case).

[52]We recognize that the issue of juror bias is a factual finding.  *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  Despite this, we reject the state court's implicit finding that these two jurors were not biased.  *See* 28 U.S.C. § 2254(e)(1) (requiring the habeas applicant to rebut the presumption of correctness given to state court factual findings "by clear and convincing evidence").

> In determining the final jurors, I used all peremptory strikes that were available to me. I have reviewed the record and confirmed the number of strikes I used in this case. I struck all persons whom I thought had some type of bias, prejudice or issue based upon my voir dire.

This is lacking in two respects. First, it speaks only of peremptory challenges and fails to indicate why for-cause challenges were not used against Sumlin and Sims. As we have noted, counsel's error in this case was the failure to use either a peremptory *or* a for-cause challenge on Sumlin and Sims. Second, counsel's affidavit fails to explain why the answers given by Sumlin and Sims did not indicate "prejudice or bias against [Virgil]." In light of the statements of Sumlin and Sims and absent some explanation for keeping them on the jury, we consider counsel's failure to use a peremptory or for-cause challenge on Sumlin and Sims to be constitutionally deficient.

We must also reject the State's attempt to support counsel's affidavit with after-the-fact justifications for keeping Sumlin and Sims on the jury. Specifically, the State notes that Sumlin, in response to a question from the state, testified that he favored a rehabilitation-based criminal justice system over a punishment-based system, an answer favorable to the defendant. In addition, Sims's testimony regarding his mother's mugging occurred at the end of voir dire, which, according to the State, may have been a last-ditch effort to avoid jury service.

We are not persuaded. These arguments have little relevance to our inquiry, and counsel's action in response to other venirepersons illustrates why. Virgil's counsel exercised peremptory challenges on Timothy Bockmier and Pamela Oliver, two venirepersons who offered testimony similar to Sumlin. Each favored a rehabilitation-based criminal justice system, but also testified that they could not be fair with respect to the testimony of a person with a prior conviction.[53] Neither the State, nor counsel in his affidavit, give any reason why Bockmier and Oliver should be struck while Sumlin should not, especially given Sumlin's testimony regarding his relationship with law-enforcement officers. Similarly, counsel used a peremptory challenge on Lisa Fitch who testified, like Sims, that she could not fairly consider the testimony of a person with a prior conviction.[54] Yet also like Sims, Fitch testified near the end of voir dire that her experience in nursing homes, seeing the rough treatment of the elderly, may prejudice her in some way.[55]

Both after-the-fact justifications are equally applicable to veniremembers that were struck by Virgil's counsel, and both justifications were offered by the state, not by Virgil's counsel. When trial counsel presents an affidavit attempting to justify his

---

[53]Transcript, vol. 4, at 67-68 (Bockmier), 73 (Oliver).

[54]Transcript, vol. 4, at 68.

[55]Transcript, vol. 4, at 83-84.

performance at trial for facially unexplainable conduct, the justifications not evident on the record and presented for the first time in response to a petition for writ of habeas corpus by the state have little value. Thus, respecting the Supreme Court's caution in *Strickland* that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation,"[56] we find counsel's performance in this case to be constitutionally deficient and the state court's decision to the contrary to be objectively unreasonable.

2

A showing of constitutionally deficient performance is not sufficient to sustain an ineffective assistance of counsel claim under *Strickland*. Virgil must traverse two additional burdens: He must establish that counsel's deficient performance prejudiced his defense; then, he must show that the state court's decision to the contrary was an unreasonable application of clearly established federal law as determined by the Supreme Court. We conclude that Virgil has met each burden.

Our inquiry into *Strickland* prejudice is tailored to our conclusions under *Strickland* performance. Since we did not find counsel's performance with respect to jurors Saddler, Faulconer, and Jarboe to be constitutionally deficient, our inquiry is only whether Virgil's defense was prejudiced by counsel's failure to

---

[56]*Strickland*, 466 U.S. at 689.

challenge for cause jurors Sumlin and Sims. Furthermore, we examine only Sumlin's and Sims's testimony regarding their inability to be impartial jurors.[57]

*Strickland*'s prejudice standard is a well-rehearsed phrase in the inferior federal courts: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[58] That prejudice shorthand is guided by principles underlying the Sixth Amendment's right to effective counsel, and it is those principles that the state court's decision--denying Virgil's ineffective assistance of counsel claim--runs afoul of in this case.[59]

*Strickland*'s prejudice inquiry is process-based: Given counsel's deficient performance, do we have confidence in the process afforded the criminally accused? "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has

---

[57]*See supra* text attached to notes 13 (Sumlin) and 14 (Sims). We ignore their testimony that they would be less inclined to believe a witness with a prior conviction than a witness without. *See supra* text attached to note 12. This testimony is consistent with the testimony of Saddler, Faulconer, and Jarboe, *see supra* text attached to note 11, which we have already held to be insufficient to establish counsel's deficient performance. *See supra* section III(C)(1).

[58]*Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[59]*See Williams v. Taylor*, 529 U.S. 362, 391 (2000) (recognizing that while the *Strickland* "reasonable probability" test can resolve "virtually all" claims of ineffective assistance of counsel, "there are situations in which the overriding focus on fundamental fairness may affect the analysis").

the assistance necessary to justify reliance on the outcome of the proceeding."[60]   Prejudice is presumed in a narrow category of cases,[61] none of which are present here.   Absent mechanical rules, "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."[62]   We focus on ferreting out "unreliable" results caused by "a breakdown in the adversarial process that our system counts on to produce just results."[63]   Guiding our prejudice inquiry, the Supreme Court requires lower federal courts to "presume" that "the judge or jury acted according to law."[64]   Most importantly for our purposes, "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and *impartially* applying the standards that govern the decision."[65]   Even according

---

[60]*Strickland*, 486 U.S. at 691-92; *Nix v. Whiteside*, 475 U.S. 157, 175 (1986) (noting that under *Strickland*, the "benchmark" of the right to counsel is the "fairness of the adversary proceeding"); *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *see also Williams*, 529 U.S. at 393 ("Cases such as [*Nix*] and [*Lockhart v. Fretwell*, 506 U.S. 364 (1993)] do not justify a departure from a straightforward application of *Strickland* when the ineffectiveness of counsel *does* deprive the defendant of a substantive or procedural right to which the law entitles him.").

[61]*United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984) (detailing situations in which prejudice should be presumed); *Strickland*, 466 U.S. at 692; *Bell v. Cone*, 535 U.S. 685, 694-98 (2002).

[62]*Strickland*, 466 U.S. at 696.

[63]*Id.*; *see also id.* at 697 ("An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged.").

[64]*Id.* at 694-95.

[65]*Id.* at 695 (emphasis added).

-24-

the state court the deference warranted under AEDPA, these basic principles, encapsulated in *Strickland*'s well-worn prejudice standard, were unreasonably applied by the state court when it denied Virgil's ineffective assistance of counsel claim.

Here, we are confronted with a situation in which, due to counsel's failure, two persons, each expressly stating that they were unable to serve as fair and impartial jurors, found themselves seated on the petit jury that convicted Virgil and sentenced him to thirty years in prison. We are required to presume "that the judge or jury acted according to law,"[66] yet the law mandates a juror willing to "lay aside his impression or opinion and render a verdict based on the evidence presented in court."[67] That did not occur here. Given the fundamental nature of the impartial jury and the consistent line of Supreme Court precedent enforcing it, we must conclude that "the result of [Virgil's trial] is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."[68]

Such an unreliable result dictates the conclusion that Virgil's defense was prejudiced under *Strickland* by the sitting of Sumlin and Sims, as each unequivocally expressed that they could

---

[66]*Strickland*, 466 U.S. at 694-95.

[67]*Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

[68]*Strickland*, 466 U.S. at 696.

-25-

not sit as fair and impartial jurors,[69] and the state court's decision to the contrary cannot stand. As we stated in *United States v. Nell*, "The jury box is a holy place."[70] Our criminal justice system is predicated on the notion that those accused of criminal offenses are innocent until proven guilty and are entitled to a jury of persons willing and able to consider fairly the evidence presented in order to reach a determination of guilt or innocence. Virgil was denied these basic principles when two jurors expressed their inability to serve fairly and impartially in his case. Had Virgil's counsel challenged for cause jurors Sumlin and Sims, the trial judge would have been forced to rule, a ruling that counsel could have objected to and pursued as error on direct appeal. There is little doubt that such an error would have been sustained by the Texas courts on direct review.[71]

The process-failure in this case stems as much from the unknown as from the known. No effort was made to explore the depth or intensity of either Sumlin's or Sims's bias toward Virgil, in particular, or criminal defendants, in general. For instance, in response to Sims's testimony regarding his mother's mugging, defense counsel remarked, "Okay. Thank you. I don't know what

---

[69]*See supra* text attached to note 13 (Sumlin) and 14 (Sims).

[70]526 F.2d 1223, 1229 (5th Cir. 1976).

[71]*See* TEX. CODE CRIM. PROC. art. 35.16(a)(9) (Vernon 2004) (providing a for-cause challenge to a venireperson that "has a bias or prejudice in favor of or against the defendant").

else I can ask you folks."[72] No question was put to either Sumlin or Sims as to whether they would be able to set aside their preconceived notions and adjudicate Virgil's matter with an open mind, honestly and competently considering all the relevant evidence. Furthermore, we cannot know the effect Sumlin's and Sims's bias had on the ability of the remaining ten jurors to consider and deliberate, fairly and impartially, upon the testimony and evidence presented at Virgil's trial. Each ultimate juror in this case heard Sumlin's and Sims's biased statements during voir dire; each watched as Virgil's representative failed to make any comment in response.

Taken together, we must say that we lack confidence in the adversarial process that resulted in Virgil's felony conviction and 30-year sentence. Sumlin and Sims unequivocally expressed their inability to serve as fair and impartial jurors in Virgil's case. No peremptory challenge was used; no challenge for cause attempted. By law, Virgil was prejudiced by the presence of partial jurors in violation of his Sixth and Fourteenth Amendment rights, and we consider the state court's decision to the contrary to be an unreasonable application of clearly established Federal law as determined by the Supreme Court. Expressed in *Strickland* terms, the deficient performance of counsel denied Virgil an impartial jury, leaving him with one that could not constitutionally convict,

---

[72]Transcript, vol. 4, at 86.

perforce establishing *Strickland* prejudice with its focus upon reliability.

## IV

To sum up, looking at the state court adjudication through our AEDPA lens, we find counsel's performance "objectively unreasonable" under *Strickland* for failing to use a peremptory or for-cause challenge in response to the testimony of jurors Sumlin and Sims that unequivocally expressed bias against Virgil. We find counsel's conclusory affidavit insufficient to show that his actions met the floor of performance mandated by the Sixth and Fourteenth Amendments. The state court's denial of Virgil's habeas claim left a defect in the trial process that "undermine[s] confidence in the outcome" in violation of *Strickland*.[73] The state court's rejection of Virgil's ineffective assistance of counsel claim was contrary to the Supreme Court's decision in *Strickland*.[74]

For these reasons, we reverse the district court's judgement denying habeas relief and remand this case to that court with instructions to order the State of Texas to either give Frank Virgil a new trial or release him from custody within 90 days of the date of the district court's order on remand.

REVERSED and REMANDED with instructions.

---

[73]*Strickland*, 466 U.S. at 694.

[74]*See* 28 U.S.C. § 2254(d)(1).