IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-70018

WALTER J KOON

Petitioner-Appellee

v.

BURL CAIN, Warden, Louisiana State Penitentiary

Respondent-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:01-CV-327

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellee Walter J. Koon petitioned the district court for writ of habeas corpus, asserting that his trial counsel, Kevin Monahan, violated his constitutional right to effective assistance of counsel during both the guilt/innocence and penalty phases of his murder trial in state court. The district court granted Koon's petition, reversing and vacating his conviction on three counts of first degree murder (and thus his death sentence) and remanding

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to state court for a new trial.  Respondent-Appellant Warden Burl Cain, on behalf of the State of Louisiana, appeals the district court's grant of habeas relief, insisting that the court erred in (1) failing to afford proper deference to the state court's decisions and rulings; (2) concluding that Koon was denied effective assistance of counsel during the guilt/innocence phase of his trial; (3) concluding that Koon was denied effective assistance of counsel during the penalty phase of his trial; and (4) denying the State's motion for a new trial.[1]  We find no merit to the State's contention that the district court failed to afford proper deference to the state court's decisions and rulings.  And, convinced that the district court applied the proper legal standards to the relevant facts and reached the correct conclusions, we affirm its grant of Koon's petition on the basis that he was denied effective assistance of counsel during the guilt/innocence phase of his trial.[2]  Finally, we conclude that the district court acted within its discretion when it denied the State's motion for a new trial.

## I. FACTS AND PROCEEDINGS

Around noon on March 5, 1993, Koon, along with his passenger, Sarah Robinson, drove to the Baton Rouge home of his in-laws, where his estranged wife, Michelle Guidry, was staying.  After parking his truck in the driveway of the Guidry residence, Koon walked to the backyard, where he shot and killed his wife before entering the home and shooting and killing her parents.  After observing Koon shoot his wife, Robinson ran screaming from Koon's truck into

---

[1] Although the State's motion in response to the district court's ruling granting Koon habeas relief was technically styled as a "motion for new trial," the State did not literally seek a new "trial" but rather reconsideration of the district court's habeas ruling.

[2] Accordingly, the question whether Koon was also denied effective assistance of counsel during the sentencing phase of his trial is moot.  See, e.g., Soffar v. Dretke, 368 F.3d 441, 442, 480 (5th Cir. 2004) (setting aside both defendant's conviction and sentence because of counsel's failure to provide effective assistance during guilt/innocence phase).  We emphasize, though, that our affirming of the district court's order that reversed and vacated Koon's conviction of first degree murder vacates his death sentence as well.  Should Koon be retried and found guilty, he must be re-sentenced as well.

the Guidry residence, where she hid until Koon had left the scene. Immediately following the shootings, Koon drove to his home in Livingston Parish, where he called the local authorities and turned himself in for the killings.

Koon was charged with three counts of first degree murder. He was initially represented by the Office of the Public Defender; however, after voicing his dissatisfaction with this representation, the Louisiana state court appointed Monahan, a private criminal defense attorney, to represent Koon jointly with the public defender. Soon thereafter, a private attorney, Denise Vinet, was substituted for the public defender as co-counsel. At the beginning of Koon's trial in March 1995, though, Monahan informed the court that Vinet wished to withdraw, stating that Vinet's assistance was not needed. Vinet also indicated that her withdrawal should not be a problem because Monahan had not asked her to do a thing on the case. The court granted Vinet's motion to withdraw, but only after Koon waived any objection. No assistant counsel was appointed to replace Vinet.

At trial, Monahan entered Koon's dual plea of not guilty and not guilty by reason of insanity. Monahan's defensive strategy centered on Koon's mental state at the time of the killings. Specifically, Monahan elected to emphasize that Koon "just had one bad week" in an effort to negate his specific intent and lessen his culpability for his actions. Monahan would introduce evidence that, by the end of the week, Koon's wife had left him; he had become ill; he had a tax lien levied against him; and he had just learned that his wife was having an affair (which, according to Koon, had been disclosed to him by Robinson while they were riding in Koon's truck en route to the Guidry residence). In addition, Monahan had been told by Koon that he was not using drugs, Xanax, or alcohol when he shot and killed the Guidrys but that he had been doing so in the early morning hours that day as well as in the preceding weeks, leading Monahan to theorize that Koon was suffering from "withdrawal" effects at the time of the

3

killings. According to Monahan, these detoxification effects combined with Koon's "bad week" to render him unable to tell right from wrong when he shot his estranged wife and her parents.

Monahan enlisted the help of a few medical experts to assist in his presentation of this insanity/manslaughter defense. His chief expert, Dr. Marc Zimmerman, who testified that Koon's detoxification contributed to his inability to tell right from wrong at the time of the killings, was hired by Monahan the day before Koon's trial began and had only an hour to interview Koon before testifying. Zimmerman's testimony was torn apart by the State's opposing expert, Dr. Donald Hoppe, who criticized Zimmerman's cursory interview of Koon as well as Zimmerman's failure to interview Koon's family members and close friends. Furthermore, Hoppe, a clinical psychologist who had not interviewed Koon but had reviewed the results of the MMPI test conducted by Zimmerman, ventured that Koon's test results showed that he was not remorseful; was a liar; was manipulative; and was violent. Monahan was unprepared—and, in fact, made no attempt—to counter the State's devastating rebuttal, even though it turned out that there was little in the literature to support Hoppe's broad interpretation of Koon's test results.

Koon's insanity/manslaughter defense was dealt another blow when Robinson, the lone eyewitness to the killings, whom Monahan had failed to interview prior to trial, contradicted Koon's own testimony by denying that she had told him shortly before the killings that his wife was having an affair with one Joey Leblanc, a person Koon particularly disliked because he had been betrayed by Leblanc in the past. Robinson also contradicted Koon's testimony that he had consumed alcohol and drugs (including Xanax) the morning of the killings.

The jury convicted Koon of first degree murder on all counts and sentenced him to death. Koon appealed his conviction and sentence to the Louisiana

Supreme Court on 11 different grounds, but that court affirmed.[3] Koon then moved for post-conviction relief in state court based on ineffective assistance of counsel. In anticipation of his post-conviction relief hearing, Koon requested that the court issue subpoenas directing the attendance of 33 witnesses at the hearing; however, the court limited him to two: Monahan and Vinet. Following Monahan's and Vinet's testimony, the state court denied Koon relief, concluding that Monahan "did a good job with what he had to work with."

After Koon exhausted his available state court remedies, he filed this petition for writ of habeas corpus in the United States District Court for the Middle District of Louisiana. The district court first granted Koon an opportunity to present the evidence that the state court had disallowed in its post-conviction relief proceeding. After holding a hearing and considering evidence concerning Monahan's performance during both the guilt/innocence and penalty phases of Koon's trial, the district court granted Koon's petition, vacating his conviction and sentence and remanding to state court for a new trial. The district court concluded that Monahan's performance was constitutionally deficient during both phases because he inadequately investigated and prepared Koon's defense, which prejudiced Koon: The jury (1) could have found him guilty of a lesser offense than first degree murder, and (2) might have sentenced him to life in prison, rather than to death. In response, the State moved for a new trial, which motion was denied. The State then timely filed a notice of appeal, challenging the district court's ruling as well as its denial of the State's motion for a new trial.

---

[3] Louisiana v. Koon, 704 So. 2d 756 (La. 1997).

## II. ANALYSIS

A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is applicable to this proceeding because Koon's habeas petition was filed after the effective date of the AEDPA.  The AEDPA specifies that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]

The Supreme Court has held that a state court's decision that correctly identifies the governing legal rule but unreasonably applies it to the facts of a particular prisoner's case is sufficient for a federal habeas court to grant the writ.[5]  For a federal court to find a state court's application of Supreme Court precedent "unreasonable," however, the state court's decision must have been more than simply incorrect or erroneous;[6] its application of federal law must have been "objectively unreasonable."[7]  Moreover, the state court's findings of fact are presumed to be correct, and the federal court only reviews the facts for clear and convincing error.[8]

---

[4] 28 U.S.C. § 2254(d).

[5] Wiggins v. Smith, 539 U.S. 510, 520 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).

[6] Wiggins, 539 U.S. at 520; Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

[7] Williams v. Taylor, 529 U.S. 362, 409 (2000).

[8] 28 U.S.C. § 2254(e)(1).

Having reviewed the record on appeal and the district court's lengthy and comprehensive ruling on Koon's petition for writ of habeas corpus, we conclude that the district court afforded proper deference to the state court's decisions and rulings. Accordingly, we reject the State's contention to the contrary.

B.      Ineffective Assistance of Counsel

The governing legal principles for Koon's claims of ineffective assistance of counsel were established in Strickland v. Washington.[9] To succeed on a charge of ineffective assistance of counsel in state court, a petitioner must satisfy both prongs of Strickland's two-part test by demonstrating that (1) counsel's performance was deficient and (2) counsel's deficient performance caused actual prejudice to the petitioner's defense.[10]

To prove deficient performance, "a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness,"[11] under the then "prevailing professional norms."[12] In evaluating counsel's performance, the Supreme Court has long referred to the American Bar Association ("ABA") Standards for Criminal Justice as "guides to determining what is reasonable."[13] Moreover, we apply "the strong presumption that counsel performed adequately and exercised reasonable professional judgment."[14] "[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that

---

[9] 466 U.S. 668 (1984).

[10] Id. at 687.

[11] Virgil v. Dretke, 446 F.3d 598, 608 (5th Cir. 2006).

[12] Strickland, 466 U.S. at 688.

[13] Rompilla v. Beard, 545 U.S. 374, 387 (2005); Wiggins v. Smith, 539 U.S. 510, 524 (2003); Strickland, 466 U.S. at 688.

[14] Virgil, 446 F.3d at 608 (internal quotation marks omitted).

it permeates the entire trial with obvious unfairness."[15] At the same time, however, we recognize the distinction between strategic judgment calls and plain omissions,[16] and we are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all."[17]

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[18] Stated differently, a constitutional trial error is harmful only if there is "more than a reasonable probability that it contributed to the verdict."[19]

The district court identified four crucial mistakes by Monahan in support of its ruling that the state court's decision that Koon was not denied effective assistance of counsel during the guilt/innocence phase of his trial "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States": (1) his failure to interview Robinson before trial; (2) his waiting until one day before trial to hire Zimmerman, his mental health expert; (3) his decision to proceed alone without the aid of at least one other attorney; and (4) his failure to prepare Koon

---

[15] Id. (internal quotation marks omitted).

[16] See Lloyd v. Whitley, 977 F.2d 149, 158 (5th Cir. 1992).

[17] Moore v. Johnson, 194 F.3d 586, 604 (5th Cir. 1999).

[18] Virgil, 446 F.3d at 611 (quoting Strickland, 466 U.S. at 694).

[19] Mayabb v. Johnson, 168 F.3d 863, 868 (5th Cir. 1999).

adequately to testify.[20] The district court made clear that Monahan's failure to interview Robinson, standing alone, is a constitutionally deficient performance; it highlighted his other missteps, though, to further emphasize the egregiousness of Monahan's deficient representation during the guilt/innocence phase of Koon's trial as well as the cumulative prejudicial effort of these multiple deficiencies.

We agree with the district court that Monahan's failure to interview Robinson constitutes deficient performance per se. Moreover, we agree that his other actions, particularly his last minute hiring of Zimmerman, exacerbate his overall deficient performance and heighten its prejudice.

ABA Criminal Justice Standards 4-4.1(a) provides:

> Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

Monahan's defensive strategy centered on Koon's mental state at the time of the killings, and Robinson was the only eyewitness to them and to Koon's behavior in the hours preceding the shootings. As such, she was the only person who could speak to Koon's mental state leading up to and during the event. Monahan should have interviewed her to ascertain what she intended to say at trial, especially whether she would corroborate Koon's intended testimony about his mental state, around which Monahan's entire defense was structured. Monahan failed even to attempt to interview her, though, and Robinson ultimately took the stand and directly contradicted Koon's testimony that she

---

[20] The district court concluded that Monahan's failure to prepare Koon adequately resulted in Koon's testimony being perceived as cold, remorseless, and unsympathetic.

had told him that his wife was having an affair. The prejudicial effect of this contradiction cannot be overstated because Monahan had theorized that Robinson's testimony would bolster Koon's "heat of passion" defense, not undermine it. Furthermore, Robinson subsequently recanted her trial testimony at the federal evidentiary hearing and admitted that she had told Koon about the affair before the killings, stating further that she would have told the truth at trial if Monahan had merely approached her ahead of time and assured her that she would not be held criminally responsible for the killings.

The State advances a number of excuses for Monahan's failure to interview Robinson, e.g., it was his policy not to interview government witnesses; there was no guarantee that she would have come clean and told the truth at trial even if she had been approached by Monahan; she was not a credible witness; and so on and so forth—none of which justify his conduct. Irrespective of Robinson's credibility (or lack thereof) and whether she would have actually told the truth as she now insists, Monahan had an absolute obligation to interview her as the only eyewitness to the crime: Her testimony was crucial to Monahan's defensive theory. If he had interviewed her and then decided not to call her to testify, his decision might be excusable as strategic.[21] His failure to interview her altogether, though, is deficient per se, at least under the specific circumstances present here.[22]

Monahan's decision not to hire Zimmerman, his primary mental health expert, until one day before trial exacerbates his overall deficient performance. Monahan came up with the detoxification facet of the mental health defense because Koon had told him that he was not using drugs or alcohol when he shot his wife and her parents (Koon later revealed, during the federal evidentiary

---

[21] Soffar v. Dretke, 368 F.3d 441, 474-75 (quoting Anderson v. Johnson, 338 F.3d 382, 392 (5th Cir. 2003)).

[22] Id. at 471-76.

hearing, that he was in fact using at the time). Zimmerman was able to conduct a few tests on Koon, but only met with him for one hour and could not consult with any of his family members or friends before testifying. The State's opposing expert, Hoppe, severely undermined Zimmerman's testimony, highlighting the limited time and information available to Zimmerman. This rebuttal testimony went uncontested by Monahan. In fact, Zimmerman was not even present for Hoppe's testimony, as Monahan had failed to ensure that Zimmerman was on hand to assist Monahan in cross-examination. At the federal evidentiary hearing, Koon's experts testified that Zimmerman had insufficient time to develop a complete psychological history and insufficient information on which to base an opinion of Koon's mental state at the time of the killings, which left Zimmerman's testimony vulnerable to attack and resulted in severe damage to the detoxification aspect of Koon's mental health defense.

The State attempts to make much of the fact that Koon's experts at the federal evidentiary hearing had the benefit of basing their testimony on Koon's revelation that he actually had been using drugs and alcohol at the time of the killings, insisting that Koon's self-serving change in testimony cannot serve as the basis for arguing that Monahan's assistance was ineffective. Even if we acknowledge that Koon's defense would have been better served if he had admitted his drug and alcohol use, and even if we concede that Koon is solely to blame for the detoxification theory employed by Monahan, we still must evaluate the actual execution and quality of the defense as presented. And, it is apparent that this aspect of Koon's defense, predicated as it was on the effects of withdrawal, was hamstrung by Monahan's failure to hire Zimmerman until the eve of trial. The state court had granted Monahan the authority and funds to hire a mental health expert nearly a year before trial, yet he procrastinated until the last minute. Not only did Monahan make a questionable decision to pursue a detoxification defense on his own (without first consulting a medical

11

professional and substantiating his theory), but he then severely limited the effectiveness of even that questionable defense by enlisting an expert who was not given even minimally sufficient time to gather information in support of his opinions.

Considering Monahan's failure to interview Robinson and his botched handling of Zimmerman, together with his other deficiencies identified by the district court, we see as inescapable the conclusion that Monahan's performance was deficient during the guilt/innocence phase of Koon's trial. Equally inescapable is the conclusion that Koon was prejudiced by Monahan's deficient performance: There is a reasonable probability that the jury would have convicted Koon of a lesser offense than first degree murder if Monahan's performance had not been deficient.[23]

If Monahan had interviewed Robinson before trial, she may have told the truth instead of controverting Koon's testimony regarding his mental state at the time of the killings. It follows that the jury could have and likely would have given greater consideration to the "heat of passion" aspect of Koon's defense. If, on the other hand, Robinson had continued to insist on denying that she had told Koon about his wife's affair after Monahan interviewed her, he would have been aware of Robinson's intended testimony and could have adjusted his defensive strategy accordingly and mitigated the damaging effects of Robinson's testimony. Furthermore, if Zimmerman had been retained a reasonable time in advance of trial, he would have had plenty of time to evaluate Koon and interview his friends and family. That way, Zimmerman could have formulated a more informed opinion on Koon's mental state and been prepared to support and defend that opinion on cross-examination. In short, if Monahan's performance had not been deficient and prejudicial, it is probable that Koon's level of

---

[23] See LA. REV. STAT. ANN. §§ 14:30.1(A), 14:31(A)(1).

culpability would have been reduced in the eyes of the jury. These failings by Monahan, which subverted both the insanity and manslaughter aspects of Koon's defense, undermine any confidence we might otherwise have in the propriety of his first degree murder conviction. Based on the foregoing considerations, the state court's ruling that Koon was not denied effective assistance of counsel during the guilt/innocence phase of his trial is objectively unreasonable.

## C. Motion for New Trial

Before we will disturb a district court's ruling denying a motion for a new trial, we must find that the district court clearly abused its discretion.[24] Following the district court's grant of Koon's petition, the State filed its motion based on Monahan's post-federal hearing revelation that the true reason he did not interview Robinson before Koon's trial is because Koon had told him that the murders were premeditated and that Robinson was a co-conspirator. The State insists that this newly discovered information reveals that Monahan's decision not to interview Robinson was strategic, warranting a new trial under Federal Rule of Civil Procedure 59.[25]

We reject the State's contention because Monahan's disclosure, even if true,[26] does not absolve him of his failure to interview Robinson. Again, there is a critical distinction between, on the one hand, failing even to attempt to interview the lone eyewitness to a crime, whose testimony is critical to the

---

[24] Diaz v. Methodist Hosp., 46 F.3d 492, 495 (5th Cir. 1995).

[25] A motion for a new trial on the basis of newly discovered evidence requires the movant to prove the following: (1) the evidence is newly discovered and was unknown to the movant at the time of the trial; (2) the movant's failure to detect the evidence was not due to a lack of diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would probably produce a different outcome at a new trial. See United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991).

[26] The district court observed that it did not find Monahan to be credible.

defensive theory presented, and, on the other hand, strategically deciding not to call that person to testify based on the results of such an interview. Accordingly (and without determining whether the State met the other requirements for a new trial), this newly discovered evidence would not produce a different habeas outcome even if a new trial were held.[27] The district court did not abuse its discretion in denying the State's motion.

## III. CONCLUSION

We affirm the district court's holding that Monahan failed to provide effective assistance of counsel to Koon during the guilt/innocence phase of his trial, and that the state court's ruling to the contrary is objectively unreasonable. We further hold that the district court afforded proper deference to the state court's decisions and rulings in reaching its decision, and that it did not abuse its discretion in denying the State's motion for a new trial. Accordingly, we affirm the district court's grant of Koon's petition for writ of habeas corpus, reversing and vacating his conviction and death sentence and remanding his case to state court for a new trial (and re-sentencing if convicted). AFFIRMED.

---

[27] Failure to prove any one of the four elements justifies the denial of a motion for new trial. United States v. Freeman, 77 F.3d 812, 817 (5th Cir. 1996).