# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 13, 2010

No. 07-20225

Lyle W. Cayce
Clerk

LARRY TORRES,

      Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-1080

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Larry Torres filed a 28 U.S.C. § 2254 petition in the Southern District of Texas. The alleged Constitutional violations stemmed from the presence on the petit jury of a man who alluded that his ability to be fair and impartial may be negatively impacted by his personal experiences. The district court denied relief, deferring to the state habeas court's findings that trial counsel kept the juror as part of a defense strategy. We agree and affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 07-20225

I.

Torres relies heavily upon our decision in *Virgil v. Dretke*.[1] We turn first to that case. A Texas jury convicted Frank Virgil for attacking an elderly person and sentenced him to thirty years. Two jurors explained during voir dire that they could not be fair and impartial:

> DEFENSE COUNSEL: [H]ave you had any association in the past with police officers in your family or friends?
>
> VENIREMAN #16: Yes, I have relatives. I'm just saying from their experience that they've told me about, repeated offenders.
>
> DEFENSE COUNSEL: So therefore you could not serve as an impartial juror in this case?
>
> VENIREMAN #16: Perhaps not.
>
> DEFENSE COUNSEL: Is your answer no or yes?
>
> VENIREMAN #16: I would say no.[2]
>
> . . .
>
> DEFENSE COUNSEL: Your number?
>
> VENIREMAN #17: 17. . . . I don't know that it's going to be partial or impartial, but my mother was mugged and they never found the mugger. The thought keeps crossing my mind while we're talking about this, as far as assault on an elderly person. So it's weighing me because of the fact that they never did find the person. I'm thinking about that.

---

[1] 446 F.3d 598 (5th Cir. 2006).

[2] *Id.* at 603.

No. 07-20225

DEFENSE COUNSEL: Would this cause you to be a juror who could not be fair and impartial in this case?

VENIREMAN #17: Yeah, I believe so.

DEFENSE COUNSEL: All right. Not believe or is it so?

VENIREMAN #17: I said: Yes, I do believe so.[3]

Defense counsel never challenged these two veniremen. "At no point during voir dire did counsel attempt to clarify, confirm, or rehabilitate this testimony. Moreover, the trial judge never expressed any concern regarding the statements by the . . . jurors regarding their ability to be fair."[4] After sentencing, Virgil lost his direct appeal, and the state denied his habeas petition. The federal district court denied his § 2254 petition, but this court granted a certificate of appealability (COA) on the question of whether Virgil's counsel offered effective representation in failing to challenge biased jurors. We found that counsel had not, aware that "our review [was] limited by the Antiterrorism and Effective Death Penalty Act of 1996."[5]

We noted the Sixth Amendment's requirement of an impartial jury,[6] explaining "[i]t is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an error that taints any

---

[3] *Id.* at 603–04.

[4] *Id.* at 604.

[5] *Id.*

[6] Citing favorably to *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001), and *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976).

resulting conviction with constitutional infirmity."[7] We refused to "hold that a structural error alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context," but explained "the fundamental nature of such rights—including the right to an impartial jury—serves as an important guidepost in our evaluation of whether the state court's denial of Virgil's ineffective assistance of counsel claim was 'objectively unreasonable' under AEDPA."[8]

Guided by *Strickland v. Washington* and its two-part test,[9] we first found deficient performance for failing to challenge the two jurors—either for cause or peremptorily.[10] We were not persuaded by an affidavit submitted by defense counsel explaining his inaction to the state habeas court:

> I spent approximately thirty (30) minutes talking to and questioning the jury in this case. I was able to ask all of the questions that I thought were necessary to determine if there was any prejudice or bias against my client. I was also able to question the potential jurors regarding any issues that I thought might arise in this case.
>
> In determining the final jurors, I used all peremptory strikes that were available to me. I have reviewed the record and confirmed the number of strikes I used in this case. I struck all persons whom I thought had some type of bias, prejudice or issue

---

[7] *Virgil*, 446 F.3d at 607.

[8] *Id.*

[9] *See* 466 U.S. 668, 687 (1984).

[10] *Virgil*, 446 F.3d at 610.

No. 07-20225

based upon my voir dire.[11]

We observed that the affidavit "lacks any suggestion of a trial strategy for not using peremptory or for-cause challenges" and "fails to explain why the answers given [by the two jurors] did not indicate prejudice or bias."[12]

We also concluded Virgil had established both that (1) the deficient performance prejudiced his defense and (2) the state habeas court's adverse decision "was an unreasonable application of clearly established federal law as determined by the Supreme Court."[13]  "We are required to presume that the judge or jury acted according to law, yet the law mandates a juror willing to lay aside his impression or opinion and render a verdict based on the evidence presented in court."[14]  That did not happen in Virgil's case.  "Given the fundamental nature of the impartial jury and the consistent line of Supreme Court precedent enforcing it, we must conclude that 'the result of [Virgil's trial] [wa]s unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"[15]

II.

Larry Torres is 11 years into a 70 year sentence for possession of cocaine

---

[11] *Id.*

[12] *Id.* (quotation marks omitted).

[13] *Id.*

[14] *Id.* at 612–13 (citations and quotation marks omitted).

[15] *Id.* at 613 (quoting *Strickland v. Washington*, 466 U.S. 668, 696 (1984)) (first alteration in original).

No. 07-20225

with intent to distribute.  Jon Gorman served as foreman of the jury that convicted and sentenced Torres.  During voir dire, the judge asked all panelists whether they could: honor the burden of proof and presumption of innocence, consider the full range of punishment, and follow the Fifth Amendment if the defendant failed to testify. Gorman did not raise any concerns in response to these inquiries.  Specifically, when explaining reasonable doubt, the trial judge told the panel that the court needed to know of any feelings that might prevent a panelist from being fair and impartial. One panelist raised his hand, but Gorman did not.  Yet when the prosecutor asked: "Anybody had a friend, family member, close relative had a problem with drugs who would not be able to sit in this case, guilt or innocence or punishment, anyone at all?" Gorman spoke up. "I might have a problem with that, 34." Later, Gorman approached the bench.

> THE COURT: The next one I have is 34.  I have just a question mark.
>
> PROSECUTOR: He would not consider life, your Honor.[16]
>
> THE COURT: You want to agree, Ira [Chenkin, defense counsel], or talk?
>
> DEFENSE COUNSEL: I would like to talk.
>
> PROSECUTOR: Yeah, me too.
>
> THE COURT: Mr. Gorman, 34 . . . . Are you active in the Air Force?
>
> GORMAN: Yes, sir.

---

[16] Nothing in the record shows Gorman would not consider a life sentence so the prosecutor likely misspoke here.

No. 07-20225

THE COURT: Living here now?

GORMAN: Yes, sir.

THE COURT: I'm an Air Force retiree.  Good to have you here. What is your rank?

GORMAN: E-6.

THE COURT: I was one of those once.  Mr. Chenkin has a question.

DEFENSE COUNSEL: Can you consider the full range of punishment?

GORMAN: You know, I would have a hard time and the reason is I'm a foster parent and I have foster children living with me right now from the State of Washington and their mother put me in the situation that my foster daughter is in.

DEFENSE COUNSEL: I don't understand.

GORMAN: Could I consider the full range?  Yeah, I could very easily consider the full range.

PROSECUTOR: Now I'm a little hesitant.  Is there some experience that would make you not be able to judge these facts objectively?

GORMAN: Possibly.  I mean, I've I thought about it because it took me a while to think about what is going on; internalizing on myself. I need to separate my experiences from what might be at and hear and in that case I may have a problem making a decision based on –

PROSECUTOR: This evidence?

GORMAN: Yes.

THE COURT: Whatever those situations were or are, do you think

7

No. 07-20225

you can set those aside and when you are considering the evidence in this case or do you think that is going to affect your ability to be fair and impartial?

GORMAN: I think it would affect my ability to be fair and impartial because they are there.

THE COURT: You don't think you can set them aside?

GORMAN: I've been doing this for about five years now and there are things I've seen that I think –

THE COURT: Based upon experiences, you feel like you can't be fair to the defendant or the State?

GORMAN: Probably more for the State.

THE COURT: You don't think you could be as fair to him?

GORMAN: That's correct.

THE COURT: Question?

PROSECUTOR: No.

DEFENSE COUNSEL: No further questions.

THE COURT: Thank you, sir.

PROSECUTOR: I think we should keep him.

DEFENSE COUNSEL: Leave him alone.

No further questions were put to Gorman.  Defense counsel did not move to strike Gorman, either for cause or to exercise a peremptory challenge.  Torres

No. 07-20225

was convicted and sentenced to 70 years; appealed and lost; and did not seek Supreme Court review.

Torres filed a state habeas petition, alleging jury bias and ineffective assistance of counsel for failure to strike Gorman. The state habeas court (a different judge than the one who presided over the trial) ordered Chenkin to file an affidavit. It stated:

> I have been asked to explain the reasons for my decision not to challenge or exercise a peremptory strike against venireman Jon Gorman at . . . trial in the primary case. I recall, based on general voir dire discussions with the venirepanel, that I had the impression that Mr. Gorman was going to be a defense-oriented juror. I recall that I had developed this impression based on Mr. Gorman's responses to questions as they were asked by both myself and the State, although I don't believe Mr. Gorman's specific responses are reflected in the appellate record. I further recall that, because I believed Mr. Gorman was defense-oriented, I did not wish to question him at the bench. However, the prosecutor did want to question Mr. Gorman, so I attempted to protect him as a defense juror.
>
> As Mr. Gorman began to answer questions posed by the judge, prosecutor, and myself, I realized that he was starting to flip-flop on several of his answers. However, I remember at the time thinking that it would not be a bad idea to have an equivocating juror on this case. The evidence against Larry Torres was strong, Mr. Torres was a difficult client, and I believed it was going to be a difficult case to win.
>
> I thought that Mr. Gorman's presence on the jury, if not sufficient to result in an acquittal, would at least give us a good chance at getting a hung jury and a mistrial. I made the strategic decision not to challenge Mr. Gorman for cause; likewise, I chose not to exercise a peremptory strike against him. Although some of Mr. Gorman's answers at the bench were not exactly favorable to the

No. 07-20225

> defense, it was still my impression that he would be a good defense
> juror or, at least his presence might lead to a mistrial.

The state habeas court ruled on the merits, finding Chenkin to be credible and the facts asserted in Checkin's affidavit to be true: he made a strategic decision not to challenge Gorman. The Texas Court of Criminal Appeals denied relief based on the state habeas court's recommendation.

Torres filed a pro se 28 U.S.C. § 2254 petition in federal district court. Texas responded and moved for summary judgment.[17] The district court granted summary judgment, denying relief. As to juror bias, the district court deferred to the state court fact finding that Gorman was not partial. Although his colloquy at the bench suggested he might not be fair to Torres, Gorman's responses to questions about burden of proof and trial procedure outweighed any potential bias. As to ineffective assistance, the district court again deferred to state court fact finding that Chenkin had made a strategic choice to keep Gorman. The court differentiated *Virgil* on the idea that the after-the-fact affidavit here was more thorough and direct than the lawyer's after-the-fact affidavit there. This court granted a COA on the juror bias and ineffective assistance claims.

---

[17] Summary judgement in federal habeas is different than in the average civil case. *See*, *e.g.*, *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004) ("[Section] 2254(e)(1) – which mandates that findings of fact made by a state court are 'presumed to be correct' – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless [the petitioner] can 'rebut [ ] the presumption of correctness by clear and convincing evidence' as to the state court's findings of fact, they must be accepted as correct." (third alteration in original)).

No. 07-20225

III.

A.

We review the factual issues of a district court's denial of habeas relief for clear error and the legal issues de novo, applying the same deference to the state court's decision as the district court must.[18]   Torres's § 2254 petition falls under AEDPA, so we "defer to a state court's adjudication of a claim if the claim has been adjudicated on the merits in the state court proceedings unless the state court decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[19]   We must accept the state habeas court's fact finding unless rebutted by clear and convincing evidence.[20]   The jury bias question is one of fact,[21] and the ineffective assistance issue presents a mixed question of law and fact.[22]

B.

Contrary to what Torres claims, this case is not controlled by *Virgil*.  In *Virgil*, the two questionable jurors provided specific statements during voir dire indicating why they could not be fair and impartial.[23]   Later, defense counsel

---

[18] *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).

[19] *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010) (quoting 28 U.S.C. § 2254(d)).

[20] 28 U.S.C. § 2254(e)(1); *see also Virgil*, 446 F.3d at 610 n.52.

[21] *See Virgil*, 446 F.3d at 610 n.52.

[22] *See Woodfox*, 609 F.3d at 789; *Virgil*, 446 F.3d at 604–05.

[23] *See Virgil*, 446 F.3d at 609-10 (noting that one juror stated his relationship with law-enforcement officers and knowledge of repeat offenders would preclude him from being

provided only a "conclusory affidavit" that "fail[ed] to rehabilitate his performance, as it lack[ed] any suggestion of a trial strategy for not using peremptory or for-cause challenges."[24]  In contrast, here the juror's statements on the record during voir dire were vague.  Gorman implied that a "situation" with his foster daughter's mother would affect his ability to be fair, but he never described an experience with drugs or drug dealers that would affect his impartiality.[25]  Further, unlike the *Virgil* affidavit, Chenkin's affidavit described a trial strategy that involved Gorman's statements and personality.[26]  Chenkin believed that Gorman's presence on the jury might result in a hung jury or possibly an acquittal, an explanation the state habeas court credited.[27]  As the

---

impartial and the other juror stated his mother's mugging prevented him from being impartial).

[24] *Virgil*, 446 F.3d at 610.

[25] Gorman's nebulous conversation at the bench also differentiates this case from the Sixth Circuit case we relied on in *Virgil*.  *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001).  In *Hughes*, the juror said, "I don't think I could be fair," in a case where the defendant was said to have stolen a firearm from a federal marshal at gunpoint.  The juror's assessment of her own fairness was based on her close relationship with members of the police force.  The court found these statements to be evidence of bias.  In contrast, Gorman initially stated he "would have a hard time" considering the full range of punishment.  Moments later, he stated he "could very easily consider the full range."  He never described instances involving drugs or the police that would make him bias against the defendant.

[26] We also found the *Virgil* affidavit lacking because it failed to indicate why for-cause challenges were not used against the jurors in question.  *Virgil*, 446 F.3d at 610.  That problem does not exist in this case, as Chenkin specifically stated he made a strategic decision not to use the for-cause challenge.

[27] This court gives "substantial deference to counsel's performance, applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment.  Because we must make every effort to eliminate the distorting effects of hindsight, a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Virgil*, 446 F.3d at 608 (citations and quotation marks

No. 07-20225

Texas Court of Criminal Appeals has explained, "That appellant was ultimately assessed the maximum punishment means only that the [strategic] risk did not pay off; it does not mean the strategy was unacceptable from the perspective of jury selection."[28]

Torres argues that Gorman unequivocally expressed he could not be fair and impartial. However, when the trial judge asked the panel whether anyone was unable to properly follow the laws of presumption of innocence and burden of proof, Gorman remained silent, indicating his ability to follow the law. The trial judge specifically told panelists to report feelings that would hinder their ability to apply reasonable doubt "because you may not be able to be a fair and impartial juror." Gorman said nothing.[29] Moreover, Gorman's statements at the bench did not expressly indicate a clear prejudice. He said he *thought* his experiences would affect his impartiality and that he would "probably" be more for the State, but unlike the *Virgil* jurors, none of Gorman's responses definitively showed he would not be impartial.[30]

---

omitted).

[28] *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (reversing the court of appeals and finding that defense counsel's failure to strike an ex-narcotics officer venireperson in a drug-related case could have been trial strategy).

[29] In addition, the voir dire transcript shows that defense counsel asked panelists person by person whether "You think you could be a fair and impartial juror?"

[30] We have previously differentiated *Virgil* on this basis. *See Seigfried v. Greer*, 2010 WL 1404046, at *4, 2010 U.S. App. LEXIS 7202, at *10 (5th Cir. Apr. 7, 2010) (unpublished) ("Although the statements made by Juror 2 hinted at possible bias against Seigfried, Juror 2 never explicitly stated that she could not be an impartial juror. In contrast to the statements by Juror 2 during voir dire, both this court and others courts have found actual bias where a juror forthrightly states that she could not be fair and impartial."); *White v. Quarterman*, 275 F. App'x 380, 382–83 (5th Cir. 2008) (unpublished).

No. 07-20225

IV.

The record supports the state habeas court's findings that Larry Torres's lawyer had a strategy in accepting Gorman as a juror despite the late arising impartiality concerns. The state habeas court's application of federal law was objectively reasonable, the standard required by AEDPA before granting relief.[31] Finding *Virgil* to be inapposite, we hold that Torres's trial was constitutionally sound and affirm the district court's judgment denying habeas relief.

AFFIRMED.

---

[31] *See Virgil*, 446 F.3d at 614 ("The state court's rejection of Virgil's ineffective assistance of counsel claim was contrary to the Supreme Court's decision in *Strickland*." (citing 28 U.S.C. § 2254(d)(1))); *see also Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (reciting that an incorrect application of federal law is not sufficient).