# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 16, 2013

Lyle W. Cayce
Clerk

No. 12-50341

DAVID MORALES,

Petitioner-Appellee,

versus

RICK THALER, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

The district court granted habeas corpus relief to David Morales after his claim had been denied on the merits in state proceedings. The state appeals, urging that the relitigation bar in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), forbade the court to disregard the

No. 12-50341

state courts' factual findings and legal conclusions. We agree, so we reverse and render a judgment of dismissal.

## I.

Morales was convicted of one count of aggravated sexual assault of a child and one count of indecency with a child and sentenced to thirty-five years on the first count and twenty on the second. The complaining witness, E.O., testified that when she was six years old, Morales lured her into a bathroom, where he touched and penetrated her vagina with his index and middle fingers.

At his trial almost nine years later, Morales was represented by Charles Roberts and Angelina Lugo. The trial court was unable to impanel a jury on its first attempt. During the second attempt,

> One of the prospective jurors . . . was Robyn Wyatt, who was a prosecutor in the El Paso County District Attorney's Office, the same office that was prosecuting [Morales]. During voir dire, Wyatt maintained without contradiction that she could be fair and impartial despite her employment and her acquaintance with the State's prosecutors, investigators, law enforcement personnel, the judge, and defense counsel. Additionally, Wyatt stated that she had not worked on [Morales's] case. [Morales], however, challenged Wyatt for cause, arguing that she was an actual party to the case because she was a member of the district attorney's office. The trial judge denied [Morales's] challenge, noting that Wyatt was not shown to be biased and that [Texas law] does not make her subject to a challenge for cause based solely upon her occupation as an assistant district attorney.

*State v. Morales*, 253 S.W.3d 686, 689 (Tex. Crim. App. 2008).

Roberts used all ten of his peremptory strikes, plus an eleventh on a potential alternate juror. That left eighteen potential jurors, so the state used only three strikes, plus one on an alternate. Neither side used a strike on Wyatt, who served as the presiding juror. Because Roberts failed to strike Wyatt, he did not preserve error, if any, on the denial of his challenge for cause. *Id.*

2

No. 12-50341

Morales moved for a new trial alleging, as relevant here, that his trial attorneys provided ineffective assistance of counsel ("IAC") when they failed to preserve error by declining to use a peremptory challenge against Wyatt.

> Attached to the motion were affidavits from [Roberts and Lugo] in which they said that they "left [Wyatt] on the jury without looking at" her juror questionnaire. [Roberts] explained in his affidavit that he failed to examine Wyatt's questionnaire before trial because he assumed that she would "automatically" be struck because of her status as an assistant district attorney but that they "were confronted with several bad choices when [they] had to make the strikes" at the end of voir dire, and they made the choice to retain her on the jury—again, without first examining her questionnaire. He maintained that had he read Wyatt's questionnaire, he would have exercised one of his peremptory challenges against her because of the "magnitude" of her connections to law enforcement (her father had been a police officer for 33 years, and she had "many, many friends" in law enforcement, according to her questionnaire), and because of the fact (also contained in Wyatt's questionnaire) "that she was repeatedly the victim of numerous crimes (including sex crimes)[.]" Both attorneys said in their affidavits that their failure to strike Wyatt had amounted to ineffective assistance of counsel.

*Id.* at 689–90 (second, fourth, and fifth alterations in original).

The trial court held a hearing, during which Roberts testified that he understood the procedure for preserving error and had no strategic justification for leaving Wyatt on the jury. "It was a decision that I kind of made in a vacuum," he said. "[B]ecause I had decided that she would be struck anyway, I never—I made the mistake of never, ever looking at her sheet." Roberts assumed that Lugo would look at her questionnaire, conceded on cross-examination that he "did make a decision that day, clearly, to not strike her," but could not "really understand how we left her on the jury." For any defense counsel to leave "a lawyer for the State" on a criminal jury, he opined, was "per

3

se, ineffective assistance of counsel." *Id.* at 690.[1]

The state called Judge Sam Medrano, Jr., who testified concerning a conversation he had with Roberts while the jury was deliberating. The two wondered why the jury had been deliberating for so long. "[W]hen a prosecutor is the presiding juror," Medrano told Roberts, "I would assume it's going to take a while before they come back with questions or a verdict[.]" *Id.* According to Medrano,

> [Roberts] indicated to me that it was a decision on their part to leave [Wyatt] on the jury. There were certain factors that were taken into account. He indicated . . . that there was a male juror who was college-educated from Louisiana and was a Republican, and that was a person that they felt they needed to strike more than Robyn Wyatt, and that Ms. Wyatt was a prosecutor that they had dealt with in the office who was as fair a prosecutor as they've ever dealt with, and that they felt comfortable with her being a juror in this case because of their working relationship with her as a prosecutor.

*Id.* at 690–91 (second alteration in original). As Medrano remembered their conversation, Roberts told him that "he had taken into account the fact that she was a prosecutor and made a decision to leave her on as a juror." *Id.* at 691.

Roberts was recalled to the stand and admitted that Medrano accurately recounted their conversation. He acknowledged he had decided not to strike Wyatt but insisted he had not had extensive discussions about it beforehand with Lugo. As to the explanation he offered the judge—"I think I was less than candid to Judge Medrano because I wasn't testifying and I wasn't—I was just trying to put the best face on it that I could." *Id.* The trial court denied Morales's motion for a new trial.

On appeal, Morales argued that the trial court erred in denying his chal-

---

[1] Lugo testified that she (1) failed to read Wyatt's questionnaire, (2) should have insisted they use a peremptory strike, (3) had no strategic reason for failing to do so, but (4) made a conscious choice not to. *Id.*

lenge to Wyatt for cause and that his counsel provided IAC by failing to use a peremptory strike to preserve the issue. The appeals court held that Morales had waived the challenge for cause but that Wyatt should have been disqualified under the "implied bias" doctrine, that his counsel rendered IAC by failing to preserve the error, and that Morales suffered prejudice ("trial before a partial jury") as a result. *Id.* at 691–92. The court focused on the concurring opinion in *Smith v. Phillips*, 455 U.S. 209, 221, 222 (1982), in which Justice O'Connor, writing only for herself, maintained that "some extreme situations . . . would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency[.]"

The Texas Court of Criminal Appeals ("TCCA") reversed. Assuming *arguendo* that Wyatt was challengeable for cause under the implied-bias doctrine, the court reasoned that trial counsel could have made a legitimate strategic decision to forgo such a challenge in return for a more favorable jury overall. *Morales*, 253 S.W.3d at 692. The court held that

> if the exigencies of trial call upon trial counsel to make a difficult choice between exercising a scarce peremptory challenge to preserve such an error for appeal, on the one hand, and exercising that peremptory challenge for some other purpose in order to secure a perceived advantage at trial, on the other, it does not violate the defendant's Sixth Amendment right to the effective assistance of counsel for trial counsel to opt for the latter.

*Id.* at 696. The right to an impartial jury, reasoned the TCCA, is a waivable right, subject to legitimate strategic considerations. If defense counsel can legitimately choose to impanel a juror who is actually biased against the defendant, *see Delrio v. State*, 840 S.W.2d 443, 445–46 (Tex. Crim. App. 1992), they could choose to impanel one who is only impliedly biased, *Morales*, 253 S.W.3d at 698.

The court then considered the hearing testimony, especially Roberts's statement to Medrano that they were "comfortable" leaving "as fair a prosecutor

as they've ever dealt with" on the jury. From this, "the trial court could rationally infer that [Morales's] trial attorneys made a difficult tactical decision to leave Wyatt on the jury" and could have credited Medrano's testimony while finding Roberts's and Lugo's incredible. "Reviewing courts," the court noted, "are bound to defer to such implicit findings of fact." *Id.* Therefore, because trial counsel legitimately could have made a strategic choice to leave Wyatt on the jury, and because it was required to defer to the trial court's factual determination that Morales's attorneys had done so, the court concluded that the failure to use a peremptory strike did not amount to IAC. *Id.* at 698–99.

Morales next applied for state postconviction relief, arguing, again, that Roberts and Lugo had rendered IAC. The state habeas court concluded that Morales's argument was barred because it had already been raised and rejected; in the alternative, the court held that trial counsel were not deficient. Of particular importance, the court found "not credible Attorney Robert's [*sic*] affidavit and new-trial testimony, in which he asserted that he did not view Wyatt's questionnaire and had no strategic reason for leaving her on the jury."[2] Contrariwise, the court found "credible the Honorable Judge Medrano's account of the discussion that transpired between him and Attorney Roberts regarding trial counsels' decision to leave Wyatt on the jury." "The record," according to the court, "reflects that trial counsel had a strategic reason for leaving Wyatt on the jury." The TCCA adopted the habeas court's findings of fact and conclusions of law without opinion.

Morales applied for habeas relief under 28 U.S.C. § 2254, which the district court granted. The court acknowledged the TCCA's deference to the trial court's finding that Morales's counsel had made a "difficult tactical decision" not to strike Wyatt from the jury, but it disagreed with the TCCA's conclusion that

---

[2] The court reached parallel findings concerning Lugo.

No. 12-50341

that was a reasonable finding of fact. In particular, the district court credited "the admissions by both of Morales's trial counsel that they erred when they failed to review Wyatt's juror information sheet and failed to preserve the trial court's error," and it also credited "the assertions by Morales's attorneys that they had no strategic reasons for their deficiencies." Therefore, the district court found "that the state courts' decision—'was contrary to, or involved an unreasonable determination of, clearly established Federal law . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" The state appeals, urging that the district court impermissibly disregarded AEDPA's relitigation bar, 28 U.S.C. § 2254(d).

## II.

"In reviewing a grant of habeas relief, we examine factual findings for clear error and issues of law de novo." *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000). "When examining mixed questions of law and fact, we also utilize a de novo standard by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Id.*

## III.

To show IAC, Morales must satisfy both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that Roberts and Lugo "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, he must show that those "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Reviewing courts must avoid scrutinizing counsel's performance too stringently: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction

or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. The court must "evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.*

When a state court has already adjudicated a *Washington* claim on the merits, the district court may not consider the question *de novo*. Instead, AEDPA's relitigation bar requires that the petition be denied unless the state adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Federal law "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [*Washington*] incorrectly. Rather, [the petitioner] must show that the [state court] applied [*Washington*] to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002) (internal citation omitted).

No. 12-50341

"With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review." *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005). The petitioner must show that the factfinder's decision was objectively unreasonable, "a substantially higher threshold" than showing the decision was merely "incorrect or erroneous." *Blue v. Thaler*, 665 F.3d 647, 654–55 (5th Cir. 2011). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Furthermore, under 28 U.S.C. § 2254(e), the factual determinations of the state court "shall be presumed to be correct." Morales bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

*Washington* claims are particularly difficult to win under AEDPA's relitigation bar.

> The standards created by [*Washington*] and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The [*Washington*] standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under [*Washington*] with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied [*Washington*'s] deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal citations omitted). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

The state argues that the district court erred in two ways: First, it unjustifiably disregarded the state courts' factual determination that Roberts and Lugo made a strategic decision to leave Wyatt on the jury; second, without identifying any controlling Supreme Court precedent, it concluded that trial counsel were constitutionally ineffective in failing to preserve an objection that no Texas court had ever accepted. The state contends that Roberts and Lugo did not render IAC

No. 12-50341

and, in the alternative, that the Texas courts were not objectively unreasonable by so concluding.[3]

## A.

The central question is whether the state courts' factual finding[4]—that Roberts and Lugo made a strategic and tactical decision to keep Wyatt on the jury rather than seat the Republican college graduate or roll the dice with a new jury pool—was objectively unreasonable in light of the evidence presented in the state court proceedings. The district court erred on this point: Although it offered six reasons for disagreeing with the TCCA's conclusion that the trial court's implicit fact findings were reasonable,[5] its reasons are unpersuasive.

---

[3] Morales's brief fails to cite any relevant law or respond to the state's arguments in any depth. His main contention appears to be that the state's position on implied bias is irrelevant, because this "is a self evident truth of actual bias." As the state points out, any claim that Morales's trial counsel rendered IAC because they failed to object to an actually biased juror is not properly before us. Morales's apparent abandonment of the district court's implied-bias ruling does not end this case, however, because "it is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record." *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

[4] The trial court found, implicitly, that Roberts and Lugo were not credible, that Medrano was credible, and therefore that trial counsel had a strategic reason to keep Wyatt on the jury. *Morales*, 253 S.W.3d at 698. The TCCA deferred to the court's implicit factual finding. *Id.* The state habeas trial court explicitly found trial counsel incredible and Medrano credible and that trial counsel had made a tactical choice. The TCCA adopted the trial court's findings of fact. AEDPA requires us to defer to the state habeas court's findings, but those findings are intertwined with the implicit findings of the state trial court.

[5] Although the district court recited § 2254(d)(2) at other places in its opinion, it is not evident that the court actually analyzed the state courts' factual findings in light of AEDPA. The court noted that Texas "appellate courts must defer to any *reasonable* implied factual findings that the trial court might have made in denying a motion for a new trial," but it decided that it could not agree with the TCCA's conclusion that "the trial court's finding . . . was reasonable[.]" The district court's conclusion appears to be that the TCCA incorrectly deferred to the trial court's implicit finding of fact. The proper question, instead, is whether the state habeas court's findings of fact were objectively unreasonable. We assume *arguendo*, that the district court concluded, for the six reasons it gave, that they were not objectively reasonable.

Four of those reasons are irrelevant to the factual issue. First, the district court offered "Justice O'Connor's warning that an actual employee of the prosecuting agency was impliedly biased[.]" *See Smith*, 455 U.S. at 222 (O'Connor, J., concurring). Whatever the relevance of Justice O'Connor's warning to the TCCA's legal conclusion, it offers no insight into the factual question whether Roberts and Lugo made a strategic choice. Second, similarly, "the trial court's . . . denial of Morales's challenge for cause" has nothing to do with the findings of fact. Third, the intermediate appellate court's opinion, which the district court considered "well-reasoned and legally correct," did not even address whether trial counsels' failure to use a peremptory strike was a tactical choice. *See Morales v. State*, 217 S.W.3d 731, 735–36 (Tex. App.—El Paso 2007). Fourth, that Morales moved for a new trial based on IAC does not mean his factual and legal assertions were correct.

The only relevant reasons offered by the district court were that trial counsel had admitted they had not reviewed Wyatt's juror questionnaire and failed to preserve error and that they had asserted they had no strategic reason for doing so. Those admissions and assertions were only half the evidence that the state courts considered when making their factual findings; they also considered Medrano's contradictory testimony, which they credited implicitly and explicitly. Even if the parties contradicted each other on every point during the new-trial hearing, the state courts would not have been "objectively unreasonable" to believe one party over another about a he-said, she-said disagreement.

AEDPA does not allow federal habeas courts to gainsay state courts' assessments of credibility on a cold paper record.[6] In this case, though, Roberts *admitted* that Medrano had described their conversation accurately but

---

[6] *See, e.g.*, *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (reasoning that trial court determinations of credibility and demeanor, which are entitled to "special deference" on direct review, deserve "no less" respect in habeas proceedings).

explained that he had been "less than candid[.]" *Morales*, 253 S.W.3d at 691. The state courts' factual finding did not require them, therefore, to decide which of two witnesses was more credible, but instead whether Roberts was telling the truth to a sitting judge before he lost his case or truthfully testified under oath at a hearing attempting to give his client another trial. Nothing about the state courts' findings of fact was objectively unreasonable in light of the evidence before them.

## B.

Once we accept the state courts' findings of fact, the issue is whether Roberts and Lugo rendered IAC by making a difficult strategic choice to seat Wyatt rather than preserving Morales's implied bias challenge, or, more accurately, whether the state courts' conclusion that they were not constitutionally ineffective was contrary to or an unreasonable application of clearly established federal law. Both courts that have granted habeas relief to Morales have focused on Justice O'Connor's opinion in *Smith*, 455 U.S. at 221, in which she argued that the doctrine of implied bias was justified in "extreme situations," which might include the revelation that a juror was employed by the prosecuting agency, *id.* at 222.

The state argues extensively that the implied-bias doctrine was not controlling precedent during Morales's trial, that it was not clearly established federal law as determined by the Supreme Court, and that, in any case, Justice O'Connor's solo concurrence could not bind the TCCA. This court has held, however, "that the doctrine of implied bias is clearly established Federal law as determined by the Supreme Court." *Brooks v. Dretke*, 444 F.3d 328, 329 (5th Cir. 2006) (internal quotation marks omitted).[7] We need not decide whether the

---

[7] The state contends that *Brooks* "was unlawful insofar as it departed from [*Andrews*
(continued...)

No. 12-50341

state's contentions are correct; the TCCA held that Roberts and Lugo did not render IAC *even assuming* that "the Sixth Amendment embraces the doctrine of implied bias . . . [and that] the implied bias doctrine would require the exclusion from jury service of a prospective juror who is an employee of the prosecuting agency, as Wyatt was." *Morales*, 253 S.W.3d at 696. If the TCCA's decision was contrary to clearly established federal law, it was not for failure to recognize the implied-bias doctrine.

In summary, the TCCA determined that trial counsel did not render IAC, because the right to an impartial jury "is subject to waiver . . . [and] subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of trial," and Roberts and Lugo made a legitimate tactical decision to leave Wyatt, a fair prosecutor with whom they felt comfortable, on the jury. *Id.* at 697–98. Neither Morales nor the district court points to any Supreme Court holding that contradicts the TCCA's reasoning, nor have we discovered one. For that and three additional reasons, the TCCA's holding was not contrary to or an unreasonable application of clearly established federal law.

First, on multiple occasions, this court has concluded that attorneys did not render IAC when they decided for strategic reasons not to strike potential jurors who admitted they were "probably" biased against the defendant. In *Torres v. Thaler*, 395 F. App'x 101, 107–08 (5th Cir. 2010) (per curiam), defense counsel decided not to use a for-cause or peremptory strike against a potential

---

[7] (...continued)
*v. Collins,* 21 F.3d 612, 620 (5th Cir. 1994)], which held that '[t]he Supreme Court has never explicitly adopted or rejected the doctrine of implied bias [and] has not looked favorably upon attempts to impute bias to jurors.'" The *Andrews* court, 21 F.3d at 620–21, went on, however, to cite and apply Justice O'Connor's opinion, concluding that the juror was not a "close relative" of the victim even though his daughter had been married to the victim's deceased grandson. Nothing about *Brooks* overruled *Andrews*, so we may not disregard *Brooks*. Our rule of orderliness prevents one panel from overruling the decision of a prior panel." *Van Staden v. St. Martin*, 664 F.3d 56, 58 n.3 (5th Cir. 2011) (citation omitted), *cert. denied*, 133 S. Ct. 110 (2012).

juror who "*thought* his experiences would affect his impartiality and that he would 'probably' be more for the State[.]"  The state habeas court had found that counsel made a strategic decision to seat the juror and did not render IAC.  This court held that the state court's application of federal law was not objectively unreasonable.  *Id.* at 108.[8]  If it is not IAC to decide, strategically, not to strike a potential juror who admits to being probably or possibly biased against the defendant, it would not be IAC to decide, for tactical reasons, not to strike a potential juror who is merely impliedly biased against the defendant but whom counsel thought to be fair and who swore that she could be fair and impartial.

Second, the state points out that "it is 'clearly established' that the Sixth Amendment's Confrontation Clause bars the introduction on [sic] testimonial hearsay from absent declarants."  *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).  Nonetheless, defense counsel does not render IAC by strategically forgoing a *Crawford* objection.[9]  To be sure, deciding to seat a biased juror, even an impliedly biased juror, is a much weightier decision than is deciding not to object to out-of-court statements read by the prosecutor during sentencing.  *See id.*  But neither Morales nor the district court identifies a Supreme Court case, nor have we found one, holding that the Sixth Amendment right to an impartial jury, unlike the right to confront witnesses, is unwaivable.

Third, *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006), holding that trial

---

[8] *See also, e.g.*, *Seigfried v. Greer*, 372 F. App'x 536, 540–41 (5th Cir. 2010) (per curiam) (holding that it was not IAC to decline to use peremptory strike on a potential juror whose statements "hinted at possible bias against" defendant where counsel strategically used peremptory strikes against jurors who might have been more likely to convict).  Although *Torres* and *Seigfried* are unpublished and therefore nonprecedential, *see* 5TH CIR. R. 47.5, their reasoning is persuasive.

[9] *See Rivas v. Thaler*, 432 F. App'x 395, 404 (5th Cir. 2011) (per curiam) (holding that district court's decision that trial counsel's failure to object to *Crawford* material "was based on a reasonable trial strategy and did not constitute deficient performance under [*Washington*'s] first prong" was not "debatable").  Again, *Rivas* is not precedential but is persuasive.

No. 12-50341

counsel was constitutionally ineffective for failing to challenge actually biased jurors for cause, despite the state court's decision to the contrary, is distinguishable but instructive. Petitioner contended "that his counsel was constitutionally deficient in failing to challenge for cause the five challenged jurors who were 'actually and admittedly' biased." *Id.* at 608. As to three, their "limited and natural response" to a single question—"that they could not fairly consider the testimony of a person with a prior conviction"—was "insufficient to raise any obligation on the part of counsel to respond with a peremptory or for-cause challenge." *Id.* at 608–09. As to the remaining two, their admissions that they could not be "'fair and impartial' obligated [defense] counsel to use a peremptory or for-cause challenge . . . [and failure to do] so was deficient performance under [*Washington*]." *Id.* at 610. "Moreover," the court reasoned, counsel's *post-hoc* explanation "fail[ed] to rehabilitate his performance" and "lack[ed] any suggestion of a trial strategy for not using peremptory or for-cause challenges on [the biased jurors.]" *Id.* "In light of the statements of [the jurors] and *absent some explanation for keeping them on the jury*, we consider counsel's failure to use a peremptory or for-cause challenge . . . to be constitutionally deficient." *Id.* (emphasis added). The court also rejected as unpersuasive the state's alternative explanations of counsel's potential strategy. *Id.* at 610–11.

By implication, trial counsel, making a reasonable tactical decision, could elect to seat an actually biased juror without rendering IAC.[10] That is even more true, then, where the juror was only impliedly biased, was known personally by counsel, who thought her fair, and where counsel attempted a for-cause challenge, but then was forced to decide whether to preserve a challenge no Texas court had ever used to overturn a conviction at the cost of allowing a Republican

---

[10] *Cf., e.g.*, *Torres*, 395 F. App'x at 108 (holding that the failure to strike potentially biased juror was not IAC where decision was based on trial strategy); *Seigfried*, 372 F. App'x at 540–41 (same).

on the jury. A "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally [IAC] unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil*, 446 F.3d at 608. The state courts' conclusion—that trial counsels' decision to seat Wyatt did not permeate the entire trial with obvious unfairness—is not contrary to or an unreasonable application of any Supreme Court holding of which we are aware.

The judgment granting habeas relief is REVERSED, and a judgment of dismissal is RENDERED in favor of the state.