# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 15, 2021

Lyle W. Cayce
Clerk

No. 19-30447

Glen Seals,

*Petitioner–Appellant*,

*versus*

Darrel Vannoy, *Warden, Louisiana State Penitentiary*,

*Respondent–Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-9892

Before Smith and Ho, *Circuit Judges*, and Barker, *District Judge*.*

J. Campbell Barker, *District Judge*:

Glen Seals appeals from the denial of his petition for a writ of habeas corpus. He asserts that the State used race-based peremptory strikes during jury selection in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court denied the habeas petition after careful review. We affirm.

---

* U.S. District Judge for the Eastern District of Texas, sitting by designation.

No. 19-30447

I.

**A.** One summer night in New Orleans, a bloodied taxi driver was found lying on the ground near an expressway. He used his dying breaths to describe his assailant and his assailant's clothing. Police stopped petitioner Seals in a car nearby because he matched that description. In his car was a plastic bag filled with bloodstained clothing and the keys to the victim's taxi. Seals was tried and convicted by a jury of murder. After that conviction was reversed because of an issue not relevant here, Seals was retried and again convicted.

Jury selection for the retrial consisted of the standard phases: questioning a panel of potential jurors, requests for the court to excuse panel members for cause, and the parties' use of their peremptory strikes. After examination of the first relevant jury panel, the State moved to excuse for cause one prospective juror, Esmaria Henry, because she had indicated that her faith would not allow her to judge others. The State's request also focused on Henry's apparent confusion about the meaning of self-defense and various ailments that might have interfered with her service. After Henry indicated that she could be fair and follow the evidence, the trial court chose not to excuse her for cause.

The State then turned to its peremptory strikes. It used its first strike on Henry, who was black. The parties then accepted the first black juror, Albert Jackson. After accepting Jackson, the State used its second peremptory strike on a white person. The parties then accepted Joseph Steib, the second black juror. The State then used its third peremptory strike on Byron Davis, a black person. After the Davis strike, the State used its fourth strike on Edmond Bocage, whose racial identity was unclear to the trial court.

After the Bocage strike, Seals raised a *Batson* challenge, arguing: "The State has used 75 percent, three-fourths of its peremptory strikes to extract and to strike people of color." The trial judge said of Bocage, "when I first

2

saw [him] I said white male. I don't know." The State agreed that one could not tell whether Bocage was black. Defense counsel then suggested that Bocage "identified as a person of color," and the prosecutor responded that "you can't just tell by looking." The trial court held that Seals had not made out a *prima facie* case that the State's strikes were based on race.

At the conclusion of that panel, ten people had been selected for the jury: six white, three black, and one Hispanic. For the next panel, the State argued that cause existed for the court to excuse ten people, including Sabrina Lewis and Christopher Williams. Lewis said that "two different stories [is] reasonable doubt." Williams had a felony conviction and claimed unfair treatment by the district attorney's office. The trial court chose not to excuse Lewis or Williams for cause.

The State then used its fifth peremptory strike on a panel member who was not black. The State used its sixth peremptory strike on Lewis, who was black. That strike met a *Batson* challenge. Seals argued that the State had "used four out of six peremptories to strike people of color." The State reminded the court that "this is the person that said that two stories is reasonable doubt." Defense counsel then asked the court whether it found a *prima facie* case of a strike based on race. The court stated: "[n]o, because this is one that was almost excused for cause . . . . I'm not finding a prima facie case."

After the twelfth and final juror was seated, the trial court gave each side two peremptory strikes for the selection of alternates. The State used a peremptory strike on Williams, who was black. Seals raised a *Batson* objection. The trial court overruled the objection, finding no *prima facie* showing of a race-based strike and adding that the court had "seriously considered" excusing Williams for cause.

The final jury consisted of six white jurors, five black jurors, one Hispanic juror, and two black alternate jurors. Seals was convicted by a

unanimous jury and sentenced to life in prison. Seals filed a motion for a new trial and attempted to supplement the record with an exhibit in support of his *Batson* objections; the trial court did not admit it but accepted the exhibit as a proffer. The trial court ultimately denied Seals's motion for a new trial.

**B.** Seals appealed his conviction, which the state court of appeal affirmed. *State v. Seals*, No. 09-1089 (La. App. 5 Cir. 12/29/11), 83 So. 3d 285, 299, 355, *writ denied*, 2012-0293 (La. 10/26/12), 99 So. 3d 53. As to Seals's *Batson* objections, the appellate court noted that "the issue is whether the trial judge erred by finding that defendant did not make a prima facie showing that the prosecutor used his peremptory challenges to exclude those potential jurors on the basis of race." *Id.* at 312. The court walked through the jury-selection proceedings, including the panelist responses that the State argued were reasons for the court to excuse those panelists for cause. *Id.* at 312–14. The court of appeal explained that the trial court "paid close attention to the responses of each potential juror during voir dire," and properly considered the reasons provided for the for-cause strikes. *Id.* at 314.

**C.** After exhausting his state-court avenues for post-conviction relief, Seals filed the instant federal habeas petition. A magistrate judge issued a report and a recommendation that the petition be denied, and the district court adopted that report, overruling Seals's objections regarding his *Batson* claim. In doing so, the district court declined to consider the panelists' *voir dire* answers due to concern that doing so would collapse *Batson*'s three steps.

Even without considering those panelist answers, the district court held that the *Batson* claim "must fail on the first prong of the test." Responding to Seals's argument about statistics, the district court explained that, in this case, "the number of strikes in comparison to the number of people in the jury pool who were black does not give rise to an inference of discriminatory purpose." "In a pool composed roughly half of black individuals," explained the court, "a prosecutor excluding at random would use roughly half

of his strikes to exclude prospective jurors who were black." That would "amount to between three and four strikes in this case," meaning that the prosecution, as measured at various times during jury selection, "struck between one and two jurors above a random rate." And this, the court explained, "does not raise an inference of purposeful discrimination."

The district court further noted that "other relevant circumstances strengthened the trial court's basis for its finding that [Seals] had not established a prima facie case." First, the trial court stated that it could not readily tell the race of panelist Bocage, the third person struck by the prosecution. The magistrate judge's report adopted by the district court confirmed that "unlike defense counsel, the prosecutor did not have race information about the venire and had to rely solely on physical observation." Discounting the Bocage strike in the analysis, "the rate of strikes moves closer to an even spread between strikes against black versus white potential jurors."

The district court also explained that the prosecution "did not challenge multiple black individuals who became members of the jury" despite having five peremptory strikes left to be used. That fact as well, noted the court, "weighs against a *prima facie* case." And the district court noted that Seals's jury was racially diverse, which "also weighs against a *prima facie* case." Lastly, the court repeated the state appellate court's point that "black persons were selected to serve in numbers substantially exceeding what defendant contends to be the percentage of the venire they comprised."

The district court noted that because circuit precedent treats a stage-one ruling under *Batson* as factual, 28 U.S.C. § 2254(e)(1) attaches to the state court's ruling a presumption of correctness, which can be rebutted only by clear and convincing evidence. But the district court did not reference again or apply that higher standard, and it ultimately held the *Batson* claim unpersuasive: "the state's actions in this case do not establish a prima facie case of purposeful discrimination."

No. 19-30447

## II.

On appeal, Seals argues that (1) the state appellate court unreasonably applied clearly established federal law by considering the jury panelists' *voir dire* answers among all the circumstances in deciding whether a *prima facie* case under *Batson* was shown; (2) the district court wrongly relied on the 28 U.S.C. § 2254(e)(1) presumption of correctness for state-court factual findings; and (3) his *Batson* claim, reviewed de novo, entitles him to habeas relief.

We reject each argument. First, the state appellate court did not unreasonably apply clearly established federal law in deciding Seals's *Batson* claim. Federal law requires a trial judge, at the first stage of *Batson*'s burden-shifting framework, to consider all the circumstances and decide whether they raise an inference of purposeful discrimination. *Batson*, 476 U.S. at 96–97. Seals identifies no Supreme Court precedent clearly establishing that this holistic consideration may not include the remarks of panelists on whom a peremptory strike was exercised. Nor does Seals identify any evidence in the state-court proceedings showing an unreasonable determination of fact by the state courts. Accordingly, 28 U.S.C. § 2254(d) bars habeas relief.

Second, even were the applicability of § 2254(e)(1)'s presumption consequential here, circuit precedent holds that a *prima facie* case of purposeful discrimination under the *Batson* framework is a factual finding entitled to the § 2254(e)(1) presumption of correctness. The district court correctly stated the law in that regard. That presumption is not dispositive here, however, because Seals's habeas claim independently fails both under § 2254(d) and on de novo review.

Third, regardless of § 2254(d) and (e), Seals must establish entitlement to habeas relief on the merits by showing, as relevant here, a violation of the constitutional right defined in *Batson*. As the district court explained without considering the jury panelists' *voir dire* answers, Seals failed to establish a *prima facie* case. Seals's claim fails for that reason as well.

No. 19-30447

A.

Federal law provides that a state prisoner may not receive habeas relief on a claim adjudicated on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Neither of those provisions is satisfied here.

**1.** As interpreted in *Batson* and later cases, the constitutional right of equal protection of the laws prohibits any party in litigation from using peremptory strikes based on a prospective juror's race. *Batson v. Kentucky*, 476 U.S. 79 (1986); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991); *Georgia v. McCollum*, 505 U.S. 42 (1992). Although the burden of persuading the court that a peremptory strike was based on race always rests with the party claiming such discrimination, *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993), courts can assess a *Batson* claim by shifting the burden of producing evidence in a three-step process.

First, a challenger may use a variety of evidence to make out a *prima facie* case that a strike was racially motivated. *Batson*, 476 U.S. at 95. A *prima facie* case is one that raises an adverse inference of racial discrimination. *Id.* at 96. *Batson* lists factors that might undergird a *prima facie* case, such as a party's pattern of strikes, a party's statements during *voir dire* and when exercising a strike, and whether "any other relevant circumstances raise an inference that [a party] used [peremptory strikes] to exclude the veniremen from the petit jury on account of their race." *Id.* at 96–97.

Second, if a *prima facie* case is made out, the party accused of racial discrimination assumes the burden of articulating a race-neutral reason for the strike. *Id.* at 97. "At this step of the inquiry, the issue is the facial validity of the [striking party's] explanation." *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion). "In evaluating the race neutrality of an attorney's explanation," the trial court must decide "whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Id.* at 359. The striking party must state some reason for its strike because, otherwise, the *prima facie* case of purposeful discrimination is enough to "require that [the judgment] be reversed." *Batson*, 476 U.S. at 100.

Third, if a race-neutral reason is stated, the claimant has the opportunity to show that the stated reason is pretextual. The trial court must ultimately "determine if the [claimant] has established purposeful discrimination." *Id.* at 98. The trial court's decision on the "ultimate question of discriminatory intent represents a finding of fact." *Hernandez*, 500 U.S. at 364.

That three-step process for assessing a claim of impermissible intent in striking venire panelists "corresponds with [the Court's] treatment of the intent inquiry under Title VII." *Id.* at 365 (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 293 (1982)). And, in that context, the Supreme Court has explained that the *prima-facie*-case method was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

**2.** Seals contends that the state appellate court's decision was an unreasonable application of clearly established federal law as determined by the Supreme Court in *Batson* and in *Johnson v. California*, 545 U.S. 162 (2005). That contention is unpersuasive.

The Supreme Court in *Batson* expressed its "confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination." *Batson*, 476 U.S. at 97. The state court of appeal here echoed that thought, recognizing that a trial judge "has the advantage of observing the characteristics and demeanor of the attorneys and prospective jurors," such that the state appellate court "should not substitute its evaluation of the record for that of the trial judge" and should review its conclusions regarding an inference of discrimination with "great deference." *Seals*, 83 So. 3d at 311.

Seals cites nothing in *Batson* holding that a trial court may not consider all the circumstances before the court, including a struck panelist's statements during *voir dire*. That can be relevant information—tending to make the fact suggested by the challenger more or less probable than it would be without the information. *See* Fed. R. Evid. 401. A stronger inference of discrimination might be justified for a struck panelist with unobjectionable answers during *voir dire* than for a struck panelist with answers that nearly caused the judge to excuse the panelist for cause. *See, e.g.*, *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987) (holding that the district court's observation that "a challenge for cause might have been justified" was more than sufficient under *Batson*'s third step). Requiring a trial judge to close his or her eyes to those circumstances would be contrary to the holistic approach that *Batson* requires in weighing whether an adverse inference is warranted. *Batson*, 476 U.S. at 94, 96 (holding that "the totality of the relevant facts" and "any other relevant circumstances" must be considered).

Neither does *Johnson v. California* hold that a trial court may not consider such circumstances in deciding whether to draw an inference of purposeful discrimination. In *Johnson*, a trial court denied two *Batson* objections at stage one of the burden-shifting framework, requiring the objecting party

to "establish a 'strong likelihood' that the peremptory strikes had been impermissibly based on race" before shifting the burden of production to the striking party. *Johnson*, 545 U.S. at 166. The Supreme Court reversed, holding that the "strong likelihood" standard is not appropriate at stage one of the burden-shifting framework. *Id.* at 172–73.

Seals focuses on a factual detail in *Johnson* that was not invoked in the Court's reasoning or holding. As to one of the peremptory strikes, the trial judge "explained that her own examination of the record had convinced her that the prosecutor's strikes could be justified by race-neutral reasons." *Id.* at 165. But *Johnson* did not hold that a venire panelist's *voir dire* answers may not even be considered at stage one of the burden-shifting framework. *Johnson* only held that a more-likely-than-not standard does not apply at that first stage. *Johnson* expressly gave that standard's applicability as the question presented, noting conflicting answers to that question. *Id.* at 164, 166. *Johnson* then reiterated that "[t]he issue in this case is narrow," *id.* at 168, and succinctly stated its holding: "California's 'more likely than not' standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case." *Id.* Seals does not argue that either state-court decision here violated that holding by applying a more-likely-than-not standard. Nor could he.

The "critical point" in applying § 2254(d)(1)'s unreasonable-application clause is whether "it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Seals fails to show that the state court of appeal unreasonably applied clearly established federal law, as determined by the Supreme Court, by considering venire panelists' *voir dire* answers among other circumstances in affirming the trial court's finding regarding an inference of discrimination.

**3.** Seals's opening brief makes a cursory assertion that the state court of appeal's decision was also based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding, thus satisfying § 2254(d)(2). But the argument that Seals provides toward that end merely asserts that the trial court's *prima facie* finding was wrong, without explaining with any particularity why it is outside the bounds of reasonable debate. Those are two different things. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) ("The term 'unreasonable' refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system.") (internal quotation and alteration marks omitted); *Morales v. Thaler*, 714 F.3d 295, 303 n.5 (5th Cir. 2013) (noting that § 2254(d)(2) requires that a state court's findings be objectively unreasonable, not just disagreed with by the federal habeas court). Seals's assertion that § 2254(d)(2) is satisfied is deemed forfeited for lack of adequate briefing. *E.g.*, *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). In any event, Seals points to no evidence in the state court's proceeding that shows its findings to be objectively unreasonable.

Because neither of § 2254(d)'s alternative provisions is satisfied here, § 2254(d) bars relief on Seals's habeas claim.

## B.

Seals next argues that the district court wrongly held that a presumption of correctness under § 2254(e)(1) attaches on federal habeas review to a state court's ruling on a *prima facie* showing of discrimination in jury selection. That argument fails under our binding circuit precedent, which holds: "The state court's determination that [a party] failed to make a *prima facie* showing is a factual finding. Therefore, in reviewing this finding, we must accord it a presumption of correctness, which can only be rebutted by clear and convincing evidence." *Soria v. Johnson*, 207 F.3d 232, 238 (5th Cir. 2000) (internal citations and quotation marks omitted).

In any event, the § 2254(e)(1) presumption is not dispositive here because habeas relief is foreclosed by § 2254(d), as explained above. Indeed, the district court did not rely on the § 2254(e)(1) presumption. After recognizing that the presumption applies under circuit precedent, the district court ultimately concluded, not that Seals failed to muster clear and convincing evidence to rebut the presumption, but that "the state's actions in this case do not establish a *prima facie* case of purposeful discrimination." The magistrate judge's report adopted by the district court likewise explained that Seals's *Batson* claim failed even without the clear-and-convincing standard: "Seals has not offered to this court *any evidence*, much less clear and convincing evidence, to establish that the findings and conclusions of the state trial court were unreasonable or unsupported by the record" (emphasis added).

## C.

Regardless of any applicable deference under § 2254(d) and (e) to state-court adjudications, Seals's entitlement to federal habeas relief requires him to show a violation of a constitutional or legal right. *See* 28 U.S.C. § 2254(a); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (rejecting a habeas claim because "even if AEDPA deference does not apply, Thompkins cannot show prejudice under *de novo* review"). Seals argues on appeal that his *Batson* claim succeeds on de novo review for essentially the same reasons that he presented in district court. The district court, however, carefully and extensively reviewed the record and explained that it did not make out a *prima facie* case of purposeful racial discrimination. That analysis, moreover, did not rely on the venire panelists' *voir dire* answers.

We agree with that conclusion for the reasons given by the district court. And Seals's failure to show a violation of a constitutional or legal right independently forecloses his claim for federal habeas relief.

No. 19-30447

III.

For the foregoing reasons, the judgment of the district court denying Seals's petition for a writ of habeas corpus is AFFIRMED.